Jason F. PAULEY, a minor, by his mother and natural guardian and next friend Louise Ford Pauley, Bryan F. Pauley, a minor, by his mother and natural guardian and next friend Louise Ford Pauley, Louise Ford Pauley, individually, and Patrick J. Pauley, Plaintiffs Below, Appellants,

and

Robert HLUDZINSKI, R.R. Seaside, Inc., R.R. Bayside, Inc., R.R. Outlet Malls, Inc., and Charter Oak Group, Ltd. dba Charter Oak Partners, Defendants Below, Appellants,

v.

Kimberly A. Reinoehl, the Delaware State Police, the State of Delaware Department of Public Safety, the State of Delaware, and London Fog Industries, Inc., Defendants Below, Appellees.

No. 679,2002.

Supreme Court of Delaware.

Submitted: Feb. 24, 2004.

Decided: April 26, 2004.

---

33. *Doe,* 499 A.2d at 1181.

34. *Id.* (considering this Court's logic in harmonizing the STC Act and the State Insurance Act).

Richard E. Poole and Somers S. Price, Jr. of Potter Anderson & Corroon LLP, Wilmington, Delaware, for Plaintiffs Below, Appellants.

John D. Balaguer of White and Williams LLP, Wilmington, Delaware, for Defendants and Cross Claimants Below, Appellants.

Jeffrey M. Weiner of Wilmington, Delaware, for Defendant Below, Appellee Kimberly A. Reinoehl.

Kevin J. Connors of Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, for Defendant Below, Appellee, London Fog Industries, Inc.

George H. Seitz, III, Patricia P. McGonigle, and Carrie I. Dayton of Seitz, Vanogtrop & Green, Wilmington, Delaware, for Delaware State Appellees.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS Justices (constituting the Court en banc).

STEELE, Justice.

This matter is again before us on Plaintiffs Below/Appellants' Motion for Reargument/Clarification. The factual background is set forth in detail in the opinion of the Superior Court which we incorporate herein by reference.[1]

**I**

The procedural history of this case can be summarized briefly as follows:

Appellants, the Pauley Plaintiffs, brought suit in the Superior Court to recover for injuries from an auto accident, which also resulted in the death of a passenger in the Pauley vehicle. Appellants claimed that the negligence or gross negligence of Appellee, Kimberly A. Reinoehl (a state police officer), caused the accident. They further claim that Appellees, the State Institutional Defendants, are liable as Reinoehl's employer and as the owner of the police car Reinoehl operated at the time of the accident. The Appellants further claimed that the state police negligently trained and supervised Reinoehl and that their independent negligence also proximately caused the accident. On the date of the accident, the State had available insurance that provided a maximum of $1,000,000 coverage per accident. A portion of this $1,000,000 limit has been used to settle the passenger's family's wrongful death claim. The State Defendants offered the remaining insurance coverage to settle the Pauley Plaintiffs' claim, to no avail.

All Defendants moved for summary judgment. The State Defendants claimed immunity from recovery of any sums above the amount of the State's available insurance coverage limits. A Superior Court judge granted all defense motions for summary judgment. The Order granting summary judgment was subject to the State tendering the Pauley Plaintiffs all remaining insurance proceeds. The Pauley Plaintiffs appealed. In this Court's *en banc* Opinion dated December 17, 2003, we held, *inter alia,* that 21 *Del. C.* § 4106, the Emergency Vehicle Statute (EVS), did not waive completely the State's immunity

---

1. *Shepard, et al. v. Reinoehl, et al.,* 2002 WL 1978931, 2002 Del.Super. LEXIS 188 (August 21, 2002).

from liability in the circumstances of this case. We held that subsection (d) of the EVS dealt only with the waiver of *governmental* immunity, not *sovereign* immunity, and opined that if the General Assembly intended subsection (d) to waive completely the State's sovereign immunity, it would have done so expressly. Our initial reading of the EVS, as well as a survey of the law of other jurisdictions, supported our view that the terms "sovereign immunity" and "governmental immunity" have distinct and separate meanings.

We granted reargument by an Order dated January 28, 2004 on the following issues: (1) whether the General Assembly's passage of EVS constituted a waiver of the State's immunity from liability in the specific circumstances of this case; (2) whether a jury should evaluate the record evidence of the police officer's gross negligence; and, (3) whether a jury should evaluate the facts supporting allegations of Appellee London Fog's liability. Although all three issues are the subject of the Pauley Plaintiffs' Motion, we need only address in detail the issue of whether the General Assembly intended not only to waive sovereign immunity as an absolute bar to recovery, but also to remove any cap or ceiling on the dollar amount of claims the State would have to pay if and when found liable under the EVS.

## II

■ After considering the additional briefing by the parties and the reargument

en banc, we conclude that the EVS *does* evince an intent by the General Assembly to bar the State, as owner of a police emergency vehicle, from asserting the State's sovereign immunity as a *complete* bar to an injured party's claim for personal injuries caused by the negligent or wrongful act of the State's driver or the State. We find that Delaware Law existing at the time of the EVS's passage [2], together with inferences that may be drawn from the limited available legislative history, support the conclusion that the General Assembly intended to prevent the State from asserting sovereign immunity as a complete bar to claims against the State under the circumstances contemplated by 21 *Del.C.* § 4106(d).[3] We now recognize that the term "governmental immunity," while used distinctly from the term "sovereign immunity" by other jurisdictions, was used interchangeably at the time of the passage of the EVS by both the Delaware General Assembly and the Delaware Judiciary to refer to the immunity of *both* the State *and* other governmental agencies.[4] To the extent our earlier opinion reached a contrary conclusion, we vacate that portion of the opinion.

## III

■ A conclusion that the General Assembly intended to preclude the State, its subdivisions and agencies from asserting sovereign immunity as a complete bar to

**2.** 63 Del. *Laws,* c. 162 (1981).

**3.** We are compelled by Appellants' view that, read together, the narrow language of subsections (d) and (e) expressly waives the State's immunity. This reading does not conflict with the policy of the State Insurance Program because the legislative policy embodied in 18 *Del.C.* § 6511 presumes a waiver of sovereign immunity up to the amount in a funded program or available by way of purchased applicable commercial insurance.

The General Assembly, in effect, places a cap on exposure to damages by its implementation of the program.

**4.** See, e.g., 62 Del. *Laws,* c. 124 (1979) (The General Assembly passed an Act entitled "Reestablishing the Principle of Sovereign Immunity for Counties and Municipalities Throughout the State of Delaware"); *Pajewski v. Perry,* 363 A.2d 429, 434 n. 3 (Del.1976); *Simon v. Heald,* 359 A.2d 666, 667 (Del.Super.Ct.1976).

recovery under the circumstances contemplated by the EVS does not end our inquiry. Reading the language of 21 *Del. C.* § 4106(d) and (e) narrowly does not compel a conclusion that the General Assembly also intended to remove the cap on recovery from losses occurring from negligent operation of State-owned emergency vehicles. The State Insurance Program existed when the General Assembly enacted the EVS in 1981. The purpose of the Program was to protect the public from wrongful acts committed by governmental officials by waiving the State's sovereign immunity up to a legislatively imposed ceiling.[5] As this Court noted in *Doe v. Cates,* the General Assembly made it clear when it enacted 18 *Del.C.* § 6511 that it intended to waive sovereign immunity only to the extent that either the State insurance coverage program was funded by direct appropriation (self-insurance) or that the State purchased commercially available insurance to cover the loss. 18 *Del.C.* § 6511 itself provided:

> The defense of sovereignty is waived and cannot and *will not be asserted as to any risk or loss covered by the state insurance coverage program,* whether same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate.[6] (emphasis supplied)

**The Claims Asserted Against the State Defendants**

■ There can be no question that the doctrine of sovereign immunity provides that neither the State nor a State agency can be sued without its consent. The General Assembly, however, can waive sovereign immunity by an Act that clearly evidences an intention to do so.[7]

■ Actions against the State, however, are further limited by the requirements of the State Tort Claims Act, 10 *Del. C.* §§ 4001–4005. For plaintiffs to prevail in a suit against the State, they must show that: (1) the State has waived the defense of sovereign immunity for the actions mentioned in the complaint; and, (2) the State Tort Claims Act does not bar the action.[8]

In this appeal, the Pauley plaintiffs claim the State defendants have unlimited exposure in two respects. First, they contend the State is liable because its agents negligently trained and supervised Reinoehl. Second, they assert that the State is liable by reason of Reinoehl's operation of the State owned police car.

**Negligent Training and Supervision**

With respect to the negligent training and supervision claim, Pauley has failed to cite any statute evidencing that the General Assembly has waived the State's immunity. As the Superior Court judge found, "No statutory enactment has been identified in which the General Assembly has waived sovereign immunity for claims arising from the way the State Police trains and supervises its officers."[9] Pauley, therefore, has not met the first requirement for bringing this claim against the State. Thus, the Superior Court judge

---

**5.** *Doe v. Cates,* 499 A.2d 1175, 1177 (citing *Pajewski,* 363 A.2d at 435; 18 *Del.C.* § 6503).

**6.** 499 A.2d at 1177 (quoting 18 *Del.C.* § 6511).

**7.** Del. Const. Art. I § 9; *Shellhorn & Hill, Inc. v. State,* 187 A.2d 71, 74 (Del.1962).

**8.** *See Stevenson v. Brandywine School District, et. al.,* 1999 WL 742932, at *1 (Del.Super.Ct.1999).

**9.** *Shepard,* et al., 2002 WL 1978931 at *4, 2002 Del.Super. LEXIS 188 at *12.

properly granted summary judgment on this claim.

### Officer's Operation of the Police Car

As to the second claim, the State conceded that it waived sovereign immunity, but asserted that it waived sovereign immunity only to the extent of the available commercial insurance coverage. Thus, for the Pauley Plaintiffs to prevail on a claim for unlimited liability they must identify a statute that clearly expresses the General Assembly's intent to waive the bar of sovereign immunity with respect to claims exceeding the amount of available insurance coverage. The Pauley Plaintiffs contend that 21 *Del.C.* § 4106 is such a waiver and expresses the General Assembly's clear intention both to bar sovereign immunity as an absolute defense and to expose the State to unlimited liability for grossly negligent operation of State owned emergency vehicles.

Authorized emergency vehicles are the subject of Title 21, Section 4106 of the Delaware Code. The subject is treated in Title 21—"Rules of the Road.". The specific provision at issue here is subsection "d," which states: "The owner of such emergency vehicle *may not assert the defense of governmental immunity* in any action on account of any damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of such driver or owner." [10] (emphasis supplied) The Superior Court judge found that Reinoehl was negligent. Section 4106(e) makes it clear that State owned police vehicles are authorized "emergency vehicles" within the meaning of the EVS. Thus, we conclude, the State may not assert sovereign immunity as an absolute bar to the Pauley Plaintiffs' recovery.

The problem, however, is that although sovereign immunity cannot be asserted as an absolute bar to recovery, the Pauley Plaintiffs have failed to show why a waiver (a bar to asserting the defense of "governmental immunity") under 4106(d) necessarily compels the conclusion that the General Assembly intended to expose the State treasury to unlimited monetary claims for negligent operation of a State owned emergency vehicle. The EVS does not discuss the extent of the State's exposure to damage claims at all. The statute's location in that portion of the code denominated the "Rules of the Road" suggests a focus on operation of the vehicle, not the collateral consequences going beyond the defenses applicable to negligent operation. It is difficult to conceive that the General Assembly would remove a cap on the State's exposure to damages without specifically indicating an intent to do so and without referring to 18 *Del.C.* ch. 65. It is 18 *Del.C.* ch. 65 that addresses the State Insurance Program and the methodology by which the Executive and Legislative branches determine the extent that it is feasible for the State to provide coverage for liability risks.

As we indicated in our Opinion of December 17, 2003: "This Court has confirmed that sovereign immunity is waived to the extent any risk or loss is covered by the State Insurance Program." [11] The Pauley plaintiffs nevertheless urge us to conclude that the EVS, 21 *Del. C.* § 4106(d) and (e), completely waives the State's sovereign immunity without regard to the availability of insurance.[12]

**10.** 21 *Del. C.* § 4106(d).

**11.** See *Turnbull v. Fink,* 668 A.2d 1370, 1376 (Del.1995).

**12.** We addressed the STC in our December 17, 2003 Opinion and adopt the same reasoning here.

■ Any analysis must begin with the inescapable premise that: "Where a party seeks to hold the state or a state agency liable under a statute, any reasonable doubt as to the proper construction of the statute should be resolved in favor of the State." [13] The Pauley Plaintiffs' correctly maintain that subsections (d) and (e), when read together, do indicate that the General Assembly, under the circumstances contemplated by that statute, intended to prevent the assertion of sovereign immunity as a total bar to recovery. We must conclude, nevertheless, that the General Assembly did intend that the State's exposure to damage claims continue to be limited to the amount of self-insurance or commercial insurance applicable to the occurrence giving rise to the claim. As we stated on December 17, 2003:

> We affirm recognizing that the trial judge's interpretation of governmental immunity, of course, has no bearing on any limitation on thresholds of monetary liability or any limitation on the extent to which sovereign immunity may have been waived by the State or its political subdivisions. It is, nonetheless, an interpretation entirely consistent with public policy that suggests that when the State or any of its political subdivisions make insurance available for the purpose of remedying harm caused by its emergency vehicles in an accident, then governmental immunity may not be asserted to bar a claim up to the limit of that coverage. In the context of 21 *Del. C.* § 4106(d), the trial judge's view is affirmed.

The legislative history of the State Insurance Program and the EVS suggests that subsection (d) of the EVS does not reflect any intent of the General Assembly to waive sovereign immunity completely. In 1969, the General Assembly enacted the State Insurance Program. The purpose of that Program was to protect the public from wrongful actions of State officials and employees, by waiving the State's sovereign immunity up to the threshold of insurance coverage made available by the State.[14]

This view, is not, as the Pauley Plaintiffs suggest, contrary to existing precedent. The Pauley Plaintiffs claim that: "The General Assembly enacted the EVS knowing that the State Insurance Program had not been implemented and, therefore, that the presumptive limited waiver of sovereign immunity in 18 *Del.C.* § 6511 had expired because of lack of follow through." They cite *Doe v. Cates*[15] as support for that view.[16] In fact, *Doe* exhaustively examines the history of the State Insurance Program and its relationship to waiver of sovereign immunity, and concludes that where neither self-insurance nor commercially procured insurance provides coverage, the State has in fact "met its burden under the *Pajewski* case and has overcome the presumptive waiver of immunity in 18 *Del.C.* § 6511 at 1179." *Doe* does not discuss the EVS at all, but it does explain that the State Tort Claims Act "did not waive sovereign immunity in all cases where a ministerial act was performed with gross or wanton negligence or in bad faith."[17] Tellingly and consistently with the application of the doctrine of limited waiver in Delaware, the *Doe* Court went

13. *Doe,* 499 A.2d at 1180.

14. *Id.* at 1181.

15. *Id.*

16. But see *Turnbull,* 668 A.2d at 1376. (contradicting that view both as to the law and as to the holding in *Doe.)*

17. *Doe,* 499 A.2d at 1180.

on to say: "Appellants' interpretation reads much too much into this limited statute and would expose the state to liabilities which would not otherwise exist. It was clear in 1979 that the General Assembly had declined to fund its program to provide increased protection for injured persons."[18]

Like the STC in 1979, when the EVS passed in 1981,[19] the General Assembly "is presumed to have been aware of the existing law which included 18 Del.C. § 6511."[20] Section 6511 waived immunity only as to risks covered by the State Insurance Program—a program which at the time of the occurrence giving rise to the Pauley Plaintiffs' claims, consisted solely of an applicable commercial insurance policy. Just as the *Doe* Court rejected a claim that the State waived sovereign immunity for unlimited exposure where no insurance was available, the State has waived sovereign immunity on the Pauley Plaintiffs' claims but only to the extent that the State has provided applicable insurance coverage. As *Doe* makes clear, "the mode of abolishing *or limiting*" the doctrine of sovereign immunity must be by an Act of the General Assembly.[21]

The doctrine of sovereign immunity is not judicially created nor can it be abolished or modified by judicial opinion. When, where, under what circumstances, and to what degree the State purchases commercial insurance to cover a risk, acts to self-insure or to remove any cap on the State's exposure to damages, is entirely a matter for the General Assembly.

We, as reluctantly as the Court in *Doe*, are constrained to apply the doctrine of sovereign immunity as a limited bar to exposure to damages arising from an occurrence under the EVS. The State has waived sovereign immunity in this case because it purchased commercial insurance to indemnify against the risk of loss contemplated by the EVS, but only to the extent coverage is available.

The Superior Court judge did not err when he concluded that the State faced exposure up to the amount of the insurance coverage but that 21 Del.C. § 4106(d) did not evidence an intent to remove the cap on exposure to damages determined by the policy limits of the insurance procured and applicable.

### Conclusion

Notwithstanding any holding or arguably contrary dictum in this Court's Opinion of December 17, 2003, we conclude that the General Assembly enacted Del.C. § 4106(d) and (e) with the intent to remove sovereign immunity as an absolute or complete bar to recovery under the circumstances provided for in 21 Del.C. 4106. Because the General Assembly has not acted to fund payment of losses in excess of the insurance coverage provided, it has not acted to waive sovereign immunity beyond the coverage available by applicable commercial insurance.

We further conclude that while questions of gross negligence are ordinarily for the jury and summary judgment was precipitately granted here, there is no basis for a remand or a new trial, given our conclusion on the issue of sovereign immunity. Even if a jury were to determine on remand that Reinoehl's grossly negligence act caused the injuries to the Pauley plain-

---

18. *Id.* at 1180.

19. 63 *Del. Laws* ch. 162 (1981).

20. *DuPont v. DuPont,* 87 A.2d 394 (Del.1952).

21. *Blair v. Anderson,* 325 A.2d 94, 96 (Del. 1974) (emphasis added).

tiffs, the State would still not be open to unlimited exposure for their loss.

We further conclude the trial judge correctly concluded that London Fog was entitled to summary judgment for the reasons stated in his opinion of November 18, 2002.

It is ordered that the time within which a motion for reargument may be timely filed under Supreme Court Rule 18 is shortened to five days from the date of this Opinion. This Order is due to the impending change in the composition of the Supreme Court, arising out of the retirement of the Chief Justice in April 2004.