IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES SHERMAN,<br>as Administrator of the<br>Estate of JANE D.W. DOE, | § § § § | No. 190, 2015 |
| Plaintiff-Below,<br>Appellant, | § § § § | Court Below – Superior Court<br>of the State of Delaware |
| v. | § § § | C.A. No. N10C-08-178 |
| STATE OF DELAWARE,<br>and the Estate of<br>JOSHUA GIDDINGS, | § § § § § | |
| Defendants-Below,<br>Appellees. | § § § | |

Submitted: January 13, 2016
Decided: February 16, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED in part, REVERSED in part and REMANDED.**

Edmund Daniel Lyons, Esquire (*argued*), The Lyons Law Firm, Wilmington, Delaware, Attorney for Plaintiff-Below, Appellant.

Michael F. McTaggart, Esquire (*argued*), Department of Justice, Wilmington, Delaware, Attorney for Defendant-Below, Appellee, State of Delaware.

Ronald D. Smith, Esquire (*argued*), Hudson, Jones, Jaywork & Fisher, LLC, Dover, Delaware, Attorney for Defendant-Below, Appellee, The Estate of Joshua Giddings.

**HOLLAND**, Justice:

This appeal arises from an alleged sexual assault in 2009 by Delaware State Police Officer, Joshua Giddings. The complaint alleges that after Giddings arrested the plaintiff-below, appellant, Jane D.W. Doe for shoplifting, Giddings threatened Doe with incarceration unless she would have sex with him. After she capitulated to his demand, he took her home. Doe filed this suit against both Giddings and the State of Delaware.

In this appeal, Doe alleges that the Superior Court erred in: first, granting the State's motion for summary judgment on sovereign immunity grounds; second, denying Doe's motion for partial summary judgment on *respondeat superior* grounds; and third, granting a motion to dismiss by Giddings's estate ("Giddings's Estate"). We have determined that the State waived sovereign immunity and, therefore, the Superior Court erred in granting the State's motion for summary judgment. We have also concluded, however, that Doe's other two arguments are without merit. Therefore, the judgment of the Superior Court is affirmed, in part, and reversed, in part.

### *Facts*[1]

Doe was arrested on March 19, 2009 for shoplifting at the Christiana Mall. Giddings took Doe into custody and placed her in the back seat of his police car.

---

[1] Unless otherwise noted, all facts are taken from this Court's decision *Doe v. State*, 76 A.3d 774 (Del. 2013), and the two Superior Court decisions being appealed, *Doe v. Giddings*, 2014 WL

Doe alleged that Giddings then drove her to a remote area and told Doe that he would let her go home if she performed oral sex on him. If she did not, Giddings said he would take Doe to court and Doe would have to spend the weekend in jail. Doe performed oral sex on Giddings in his police car. Giddings then dropped Doe off at her home.

After Doe reported the incident to the Delaware State Police, a sergeant investigated the allegations. The sergeant eventually arrested Giddings on charges of sexual extortion, receiving a bribe, and official misconduct. Giddings admitted to having sex with Doe in his police car, but he asserted that it had been consensual. Shortly after Giddings was arrested, he committed suicide.

### Procedural History

On August 18, 2010, Doe sued the State of Delaware and Giddings's Estate.[2] Doe sought damages for assault, battery, and rape. She asserted that the State was liable on the theory of *respondeat superior*.

On May 7, 2012, the Superior Court granted summary judgment to the State, reasoning that the State could not be liable for Giddings's conduct under *respondeat superior* because Giddings's conduct was not within the scope of his employment.

---

4100925 (Del. Super. July 29, 2014), and *Doe v. Giddings*, 2015 WL 1566597 (Del. Super. Apr. 8, 2015).

[2] Doe also died, unexpectedly, on January 28, 2015. This opinion will refer to Doe and Doe's estate collectively as "Doe."

This Court reversed that grant of summary judgment in a September 12, 2013 decision, and remanded the case for further proceedings. In doing so, this Court held that "[t]he question of whether a tortfeasor is acting within the scope of his employment is fact-specific, and, ordinarily, is for the jury to decide."[3]

On remand, the Superior Court permitted limited discovery. On March 20, 2014, the State again moved for summary judgment. This time, the State argued that sovereign immunity barred Doe's claims against it. Doe moved for partial summary judgment on the issue of liability on the theory of *respondeat superior*.

On July 29, 2014, the Superior Court granted the State's motion for summary judgment and denied Doe's motion. First, the Superior Court concluded that sovereign immunity barred Doe's claims against the State. The court reasoned that although sovereign immunity is waived for any conduct for which the State has insurance coverage, the State's self-insurance policy (the "Policy") does not cover Giddings's alleged sexual assault. Second, as to the *respondeat superior* issue, the Superior Court ruled that a jury must decide whether Giddings acted within the scope of his employment.

In July 2014, Giddings's Estate filed a motion to dismiss Doe's claims against it, arguing that these claims were barred by 12 *Del. C.* § 2102(a). That statute requires all claims against an estate that arose before the decedent's death be

---

[3] *Doe*, 76 A.3d at 776.

4

presented within eight months of the death. Doe contested the motion, arguing that Giddings's Estate waived this argument by failing to assert it earlier in the litigation. On April 8, 2015, the Superior Court granted Giddings's Estate's motion to dismiss. The court concluded that Section 2102 is a "non-claim statute," which completely bars claims against an estate that are filed more than eight months after a decedent's death, and cannot be waived.

### *State Waived Sovereign Immunity*

Doe's first argument on appeal is that the Superior Court erred by granting the State's motion for summary judgment on sovereign immunity grounds. This Court reviews the Superior Court's grant of summary judgment *de novo*.[4] We also review questions of law, including the interpretation of insurance policies, *de novo*.[5]

Generally, "sovereign immunity provides that neither the State nor a State agency can be sued without its consent."[6] Pursuant to 18 *Del. C.* § 6511, however, "[t]he defense of sovereignty is waived and cannot . . . be asserted as to any risk or loss covered by the state insurance coverage program."[7] This Court has explained:

> [T]he General Assembly made it clear when it enacted 18 *Del. C.* § 6511 that it intended to waive sovereign immunity only to the extent that either the State insurance program was funded by direct appropriation

---

[4] *ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 68 (Del. 2011).
[5] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001).
[6] *Pauley v. Reinoehl*, 848 A.2d 569, 573 (Del. 2004).
[7] 18 *Del. C.* § 6511.

(self-insurance) or that the State purchased commercially available insurance to cover the loss.[8]

The issue here is whether the State's self-insurance Policy covers the alleged sexual assault. If so, the State has waived sovereign immunity.

### The Policy Language

When the State decided to self-insure for law enforcement professional liability, it adopted verbatim the terms and conditions of its prior commercial insurance policy with Imperial Casualty and Indemnity Company (the "Imperial Policy"). The self-insurance Policy at issue provides coverage for "all sums which the Insured shall become legally obligated to pay as damages because of wrongful acts arising out of Law Enforcement activities."[9] This includes damages for "Personal Injury," which the Policy defines as:

> [F]alse arrest, erroneous service of civil papers, false imprisonment, malicious prosecution, assault and battery, libel, slander, defamation of character, discrimination, violation of property or deprivation of any rights, privileges or immunities secured by the Constitution and Laws of the United States of America or the State for which the named Insured may be held liable to the party injured in any action at law, suit in equity, or other proper proceedings for redress. However, no act shall be deemed to be or result in personal injury unless committed in the regular course of duty by the Insured.[10]

---

[8] *Pauley*, 848 A.2d at 573.
[9] A0029.
[10] A0030.

6

The Policy provides that "Wrongful Act" means "[a]ctual or alleged error, misstatement or misleading statement, omission, neglect or breach of duty by the Insured individual or collectively, while acting or failing to act within the scope of employment or official duties pertaining to the law enforcement functions of the Insured."[11]

The Policy also contains a list of exclusions, one of which is at the center of the sovereign immunity issue in this case. "Exclusion B" provides:

> THIS POLICY DOES NOT APPLY . . . . (B) to damages arising out of the ***willful violation of a penal code*** or ordinance ***committed by*** or with the knowledge or consent of ***any Insured*** or claims ***or injury arising out of acts of fraud*** committed by or at the discretion of the Insured with affirmative dishonesty or actual intent to deceive or defraud, ***however, does not apply to the named Insured or the political subdivision in which the named Insured is located.***[12]

The term "Insured" is defined in a section of the Policy entitled "Definitions":

> INSURED Means (1) ***Named Insured and all paid full or part time employees***; (B) unpaid volunteers or reserves while performing law enforcement functions for the named Insured; (C) the political subdivision in which the named Insured is located, should such political subdivision be named in any action or suit against the named Insured or any employee for any act, error or omission for which this policy affords protection, and elected or appointed officials or other personnel or units of the political subdivision of which the named Insured is a

---

[11] *Id.*
[12] *Id.* (emphasis added).

unit thereof, with respect to their responsibilities to law enforcement.[13]

This section of the Policy defines the term "Insured" as any individual or entity provided coverage under the Policy. This includes "all paid full or part time employees" as well as the "Named Insured," which is not defined in this section. "Named Insured" is defined on the declarations page of the Policy.[14] The "Named Insured" under the Policy is the "Department of Public Safety, Division of State Police."[15] Accordingly, the term "Insured" is broader, and includes the Named Insured and all paid employees, including Giddings.

### *Exclusion B And Its Exception*

Most liability policies contain an express exclusion for damages arising from injury intentionally inflicted by an Insured, e.g., dishonest, fraudulent, criminal or malicious acts.[16] In this Policy, Exclusion B applied to two types of intentional conduct by an Insured: willful violations of a penal code or acts of fraud. But, Exclusion B includes an exception: "does not apply to the named Insured or the political subdivision in which the named Insured is located."[17]

---

[13] A0030–31 (emphasis added).
[14] A0029.
[15] *Id.*
[16] *Nat'l Fire & Cas. Co. v. West*, 107 F.3d 531, 536 (7th Cir. 1997) (noting that the "fraudulent, criminal or malicious acts" exclusion is a rather common exclusion used in insurance policies).
[17] A0030.

The Superior Court failed to recognize that Exclusion B in the Policy provided a single exclusion for two types of intentional conduct by an Insured. Instead, the Superior Court parsed the Exclusion B provision for intentional conduct into two parts (willful violations of a penal code and acts of fraud) and then applied the exception in Exclusion B only to acts of fraud. That reading is not supported by the text of Exclusion B and its exception. As this opinion will explain, the language of Exclusion B and its exception did not draw a distinction between criminal acts and acts of fraud but did distinguish between denying coverage for the intentional actor (employee) and maintaining coverage for the non-actor named Insured (employer).

The issue of whether sovereign immunity is waived by the State centers on what part(s) of Exclusion B the "however" language exception modifies. Doe asserts that the "however" language exception in Exclusion B applies to all intentional conduct described in the paragraph—including the willful violation of a penal code provision—and not just the fraud provision as the Superior Court concluded. We agree with Doe's assertion.

The plain language of Exclusion B reflects that there is no comma or semicolon between the penal code and fraud references, which demonstrates a purpose to create one exclusion for the two types of intentional conduct. The Policy could have listed the penal code and fraud provisions as separate exclusions, if the purpose was for the "however" exception clause to modify only the fraud exclusion.

9

Instead, the penal code and fraud references are listed as a single exclusion—Exclusion B—without any indication that the "however" clause modifies only the latter. Thus, the "however" exception language modifies the Exclusion B in its entirety for two types of intentional conduct: the willful violation of a penal code and acts of fraud.

In construing Exclusion B, it became obvious to this Court that the State copied and adopted the Imperial Policy as its own with a word or words already omitted after "however" in Exclusion B. An examination of other standard commercial insurance policies suggests that the words omitted after "however" in Exclusion B are: "this exclusion." For example, one typical commercial insurance policy that excludes coverage for "criminal, fraudulent, malicious, dishonest or intentional acts"[18] also provides the following "however" exception to that exclusion:

**B. Exclusions** . . .

1. Criminal, Fraudulent, Malicious, Dishonest Or
   Intentional Acts

   . . . ***However, this exclusion*** does not apply to any "insured" who did not:
   a. Personally commit;

---

[18] 1. Criminal, Fraudulent, Malicious, Dishonest Or Intentional Acts
Damages arising out of any criminal, fraudulent, malicious, dishonest or intentional "act, error or omission" by an "insured," including the willful or reckless violation of any law or regulation. Available at: http://www.iiat.org/infocentral/policy-coverages/auto-dealers-(iso)/acts-errors-or-omissions-liability-coverages#exclusions.

10

b. Personally participate in;
c. Personally acquiesce to; or
d. Remain passive after having knowledge of;
any such "act, error or omission."[19]

Particularly instructive for our purposes is the explanation provided with that typical commercial insurance policy for the interplay between that exclusion for intentional conduct and its "however" exception.

> 1. Intentional Acts[:] This exclusion applies if any insured (including an employee) commits a criminal, fraudulent, malicious, dishonest or intentional act that causes a claim, but the exception preserves coverage for "innocent" insureds (including the named insured).[20]

This explanation is consistent with our interpretation of what is accomplished in the State's self-insurance Policy by Exclusion B and its exception. First, the term "this exclusion" reflects that multiple acts of intentional conduct are considered as a single exclusion. Second, the explanation distinguished denying coverage for the intentional actor and maintaining coverage for the non-actor.

It is not reasonable to conclude that the exception in Exclusion B applied only to one type of intentional conduct. It is reasonable, however, that the purpose of Exclusion B was to exclude coverage for intentional conduct by *an* Insured who was the actor and to retain coverage for the named Insured and its political subdivision which were not actors.

---

[19] *Id.* (emphasis added).
[20] *Id.*

11

This interpretation denies coverage to an Insured who is the intentional wrongdoer but continues to provide coverage to the non-actor named Insured who is responsible for that intentional conduct under another theory of liability, for example *respondeat superior*, as alleged in this case. Accordingly, the exception to Exclusion B in the Policy serves several salutary purposes. First, the exception denies coverage to an intentional wrongdoer. Second, it provides coverage for the non-actor named Insured. Third, it provides a source of monetary relief for a person who was injured, when the non-actor named Insured is legally responsible for the actor's intentional conduct.

We hold that Exclusion B excludes coverage for an otherwise Insured employee, like Giddings, for his willful violation of a penal code, but with the exception, does not exclude coverage for the "named Insured or the political subdivision in which the named Insured is located" for such acts. Therefore, the penal code exclusion does not apply to the State and the Policy insures the State against acts like the alleged willful violation of the penal code by its employee, Giddings, that is at issue in this proceeding. Because the Policy insures the State for the alleged conduct by Giddings, the State has waived sovereign immunity under Section 6511.[21]

_____

[21] The State has also argued that the "Department of Public Safety, Division of State Police" is the "Named Insured" under the Policy, and not the State. Because Doe named the State as a defendant instead of the Named Insured, the argument goes, the case should have been dismissed by the

12

*Respondeat Superior Is A Jury Question*

Doe argues that the Superior Court erred in denying her motion for partial summary judgment on the issue of the State's liability under her theory of *respondeat superior*. This Court reviews the Superior Court's denial of Doe's motion for partial summary judgment *de novo*.[22]

In its 2013 opinion, this Court recognized that there is a four-factor test for determining whether an employee acted within the scope of his or her employment:

> Under the *Restatement of Agency (2d)* § 228, conduct is within the scope of employment if, "(1) it is of the kind he is employed to perform; (2) it occurs within the authorized time and space limits; (3) it is activated, in part at least, by a purpose to serve the master; and (4) if force is used, the use of force is not unexpectable."[23]

This four-factor test, also called the Section 228 test, is used to determine "whether the employee was acting in the ordinary course of business during the time frame within which the tort was committed."[24] In other words, the relevant inquiry is not whether the conduct itself was within the scope of employment. This Court further

---

Superior Court. This argument ignores the express recognition in the State's minutes adopting the Imperial Policy that it "shall continue in force . . . as a self-insured program *of the State*." A0034 (emphasis added). And, as the State's attorney admitted at oral argument, because the State advanced this argument late in the case, Doe would need to be given the opportunity to amend and to add the Department of Public Safety, Division of State Police as a defendant, curing any defect. In its Answering Brief the State acknowledged that "the Delaware State Police is a recognized state agency under 11 *Del. C.* ch. 83."

[22] *ConAgra Foods, Inc.*, 21 A.3d at 68.

[23] *Doe*, 76 A.3d at 776 (quoting *Draper v. Olivere Paving & Constr. Co.*, 181 A.2d 565, 570 (Del. 1962)).

[24] *Id.* at 777.

explained, in its 2013 opinion, that the first two factors of the Section 228 test are satisfied because "Giddings was in uniform, on-duty, carrying out a police duty by transporting Doe to court" and because "[t]he sexual assault took place in the police car, during the time that Giddings was supposed to be carrying out police duties."[25]

Doe now asserts that, after additional limited discovery on remand, no jury question exists on the issue of liability because all four Section 228 factors are satisfied. She argues that "the facts are truly uncontested." Doe points to a deposition where a former Delaware State Police Superintendent testified that there is a general risk that some police officers will engage in sexual assault. Doe observes that this Court previously explained that "[s]everal other jurisdictions have noted that sexual assaults by police officers and others in positions of authority are foreseeable risks."[26]

In our 2013 opinion, this Court held that the question of whether an employee acted in the scope of employment "is ordinarily one for decision by the jury."[27] The Superior Court correctly determined that our 2013 holding is the law of the case and, accordingly, properly denied Doe's motion for summary judgment.

---

[25] *Id.*

[26] *Id.* at 777 n.9.

[27] *Draper*, 181 A.2d at 569; *see also id.* at 569–70 ("[W]e must examine these facts to determine whether or not reasonable men could differ upon this. If such a possibility exists, then the question becomes one to be submitted to a jury for decision.").

14

*Section 2102 Is A Non-Claim Statute*

Doe contends that the Superior Court erred in granting Giddings's Estate's motion to dismiss. We review the Superior Court's grant of a motion to dismiss *de novo*.[28]

There is an eight-month limitation on claims brought against a decedent's estate that arose before the decedent's death. Section 2102 provides:

> All claims against a decedent's estate which arose before the death of the decedent . . . , if not barred earlier by other statute of limitations, are barred against the estate, the personal representative and the heirs and devisees of the decedent unless presented as provided in § 2104 of this title within 8 months of the decedent's death . . . .[29]

This statute is at issue here because the alleged sexual assault occurred on March 19, 2009, before Giddings died on May 26, 2009; and Doe did not file a suit against Giddings's Estate until August 18, 2010, nearly fifteen months after Giddings's death.

However, Giddings's Estate did not file its motion to dismiss until July 2014. Thus, Doe contends that Section 2102 does not apply because Giddings's Estate waived its protections by waiting so long to file its motion. The Superior Court disagreed with Doe, and held that Section 2102's protections cannot be waived.[30] It

---

[28] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 438 (Del. 2005).
[29] 12 *Del. C.* § 2102(a).
[30] *See Dellaversano v. Estate of DiSabatino*, 1998 WL 960702, at *2 n.1 (Del. Super. Dec. 23, 1998) ("The Court's use of the word 'limitations' does not suggest that we are dealing with the typical statute of limitations. The statute here is a nonclaim statute which bars the claim forever

15

acknowledged that Section 2102's language "if not barred earlier by *other statute of limitations*" suggests that Section 2102 is itself a statute of limitations.[31] But the court explained "[s]imply because the phrase 'statute of limitations' was used does not necessarily mean that the statute is a statute of limitations."[32]

The Superior Court adopted the Court of Chancery's reasoning in *Cummings v. Estate of Lewis*[33] and held that Section 2102 is a "non-claim statute," the protections of which cannot be waived. In *Cummings*, the Court of Chancery concluded that Section 2102 is a "'non-claim' statute," and not a statute of limitations, because it "'*terminates* an estate's capacity to be sued eight months after the death of a decedent.'"[34] Similarly, the court explained that "if a claim that arose before the decedent's death is not presented to the Estate within eight months after the death, that claim is *forever barred* against the Estate."[35] The Court of Chancery's decision in *Estate of Holton*[36] is consistent with *Cummings*. In *Holton*, the court explained that Section 2102 "makes no exception to the type or source of the claim, but rather it bars *all* claims against the estate of a decedent."[37]

---

if not filed in a timely manner. It is thus akin to a statute of repose which need not be pleaded as an affirmative defense . . . .").

[31] *Giddings*, 2015 WL 1566597, at *3 (emphasis added) (referencing 12 *Del. C.* § 2102(a)).

[32] *Id.*

[33] 2013 WL 2987903 (Del. Ch. June 17, 2013).

[34] *Id.* at *4 (emphasis added) (quoting *Witco Corp. v. Beekhuis*, 38 F.3d 682, 690 (3d Cir. 1994)).

[35] *Id.* (emphasis added).

[36] 1976 WL 5206 (Del. Ch. Aug. 17, 1976).

[37] *Id.* at *4 (emphasis in original) (internal quotation marks omitted).

16

In this case, the Superior Court observed, Section 2102 also has a different function than statutes of limitations generally do.[38] The Court of Chancery explained this difference in *Holton*:

> From the language of the "non-claim" statute we believe the legislative intent is clear and its purposes evident. The intent and purpose is to compel claimants with demands against decedent's estate . . . to present their claims within the specified time, and when the claims are rejected, to seek prompt enforcement thereof, so that decedent's estate can be settled within a reasonable time. This seems to us to be the logical and sole purpose of the statute.
>
> The legislative purpose behind 12 *Del. C.* § 2102(a) is therefore distinguishable from that of a general statute of limitations which merely seeks to avoid stale claims. Prompt distribution of the assets of the estate is the ultimate goal of the statute.[39]

We agree with these decisions by the Superior Court and the Court of Chancery that distinguish the goal of Section 2102 from the rationale behind statutes of limitations.[40] Therefore, we hold that Section 2102 is a non-claim statute. Accordingly, the Superior Court correctly granted Giddings's Estate's motion to

---

[38] *See Giddings*, 2015 WL 1566597, at *4.

[39] *Holton*, 1976 WL 5206, at *2 (internal quotation marks omitted); *see also Cummings*, 2013 WL 2987903, at *4.

[40] Other states have come to similar conclusions in comparing their equivalents of Section 2102 to general statutes of limitations. *See, e.g., In re Estate of Ostler*, 227 P.3d 242, 246 (Utah 2009) (adopting the reasoning of Colorado courts in distinguishing between the Utah equivalent of Section 2102 and statutes of limitations); *In re Estate of Hall*, 948 P.2d 539, 541 n.3 (Colo. 1997) (en banc) (interpreting Colorado's equivalent of Section 2102 and concluding: "Although a nonclaim statute appears to be in the nature of a statute of limitations, the two concepts are distinct. Unlike a statute of limitations, the nonclaim statute may not be waived or tolled. The nonclaim statute imposes a condition precedent to the enforcement of a right of action; by contrast, a statute of limitations does not bar the right of action, but only the remedy.").

dismiss under Section 2102 despite Giddings's Estate's delay in bringing that motion.

### *Conclusion*

We reverse the Superior Court's grant of summary judgment to the State on sovereign immunity grounds. We affirm the Superior Court's denial of Doe's motion for partial summary judgment and its grant of Giddings's Estate's motion to dismiss. This matter is remanded for further proceedings in accordance with this opinion.