## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PHYLLIS MATHANGANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.:  N14C-01-205 EMD |
| v. | ) | |
| | ) | |
| CHRISTIAN HEVELOW, DELAWARE | ) | TRIAL BY JURY DEMANDED |
| STATE POLICE, DEPARTMENT OF | ) | |
| SAFETY AND HOMELAND | ) | |
| SECURITY, and the STATE OF | ) | |
| DELAWARE, | ) | |
| | ) | |
| Defendants/Third-party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REGINALD E. BROWN, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | ) | |

Submitted: February 24, 2016
Decided: May 31, 2016
Amended: June 27, 2016

*Upon Consideration of Defendants' Motion for Summary Judgment*
***GRANTED in part and DENIED in part [Amended]*[1]**

Andrew D. Rahaim, Esquire, Rahaim & Saints, Wilmington, Delaware, *Attorney for Plaintiff*.

Lynn A. Kelly, Esquire, Department of Justice, Wilmington , Delaware, *Attorney for the Defendants.*

**DAVIS, J.**

This is a civil tort action involving a car accident that occurred after a police chase.

Defendant/Third-party Plaintiff Christian Hevelow, a Delaware State Police corporal, pursued a

stolen vehicle driven by Third-Party Defendant Reginald E. Brown in New Castle, Delaware.  At

---

[1] The Court's decision, issued on May 31, 2016, is amended to correctly identify that the DEFENDANTS' Motion for Summary Judgment was GRANTED in part and DENIED in part.

the end the pursuit, Corporal Hevelow stopped his police car on a median separating the north- and southbound lanes of Route 7. Part of his car was on the median, part was on the right turn lane, and part was in the southbound lane. Plaintiff Phyllis Mathangani was driving in the southbound lane of Route 7. Ms. Mathangani claims that she did not see Corporal Hevelow's police car, which had its lights and siren on. Ms. Mathangani does not know how the accident happened, just that she was "was stuck" by the police car. The collision pushed her car into another lane and into another car.

Ms. Mathangani filed her Complaint against Defendants/Third-party Plaintiffs Corporal Hevelow, the Delaware State Police, the Department of Safety and Homeland Security, and the State of Delaware (collectively, the "Defendants") on January 23, 2014. Defendants filed the Motion for Summary Judgment (the "Motion") on January 25, 2016. Ms. Mathangani filed Plaintiff's Response to Defendants' Motion for Summary Judgment (the "Response") on February 15, 2016. The Court held a hearing on the Motion and the Response on February 24, 2016. At the conclusion of the hearing, the Court took the matter under advisement.

For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART.** The Court finds that the facts relating to Corporal Hevelow's conduct on the date of the alleged accident, January 28, 2012, fail to support a claim of gross or wonton negligence. Accordingly, the Court holds that Corporal Hevelow is immune from suit under both the State Tort Claims Act and the Authorized Emergency Vehicle Statute (the "AEVS"). The Court also holds that the Delaware State Police, the Department of Safety and Homeland Security, and the State of Delaware cannot be held vicariously liable for any of Corporal Hevelow's conduct on January 28, 2012. However, the Court will allow this civil action to proceed against the owner

2

of Corporal Hevelow's vehicle[2] to the extent that the claims are based upon allegations of negligence against Corporal Hevelow that involve conduct not covered by the enumerated privileges of the AEVS.[3]

## FACTUAL BACKGROUND

Corporal Hevelow saw Mr. Brown driving a vehicle during a patrol near Route 7, south of 273, in New Castle, Delaware on the afternoon of January 28, 2012.[4] Corporal Hevelow ran the registration and saw that the vehicle was stolen.[5] Corporal Hevelow notified the other officers on their shifts and the dispatch center.[6] Backup told him that they were on the way. Corporal Hevelow followed the vehicle to Rivers End Drive.[7] Corporal Hevelow realized that Mr. Brown knew he would be stopped, so Corporal Hevelow turned on his emergency lights to initiate a traffic stop.[8] Mr. Brown slowed down and started to pull over.[9] Then Mr. Brown increased speed and took off.[10] Corporal Hevelow activated his sirens and followed.[11] Corporal Hevelow notified dispatch of his movements throughout the chase and even requested a helicopter be used when he lost his visual.[12]

The record provides that when Corporal Hevelow observed pedestrians in the area of the pursuit, Corporal Hevelow slowed down and gave Mr. Brown's vehicle space.[13] Even when

---

[2] The record is not clear as to who was the owner of Corporal Hevelow's vehicle on January 28, 2012. For purposes of this opinion, the Court will assume that the Delaware State Police, the Department of Safety and Homeland Security, and the State of Delaware all own the vehicle. The parties, however, should take actions to clarify this question of fact prior to any trial in this civil action.

[3] As set forth below, the Court will also grant summary judgment in favor of the Defendants on the issue that any recovery in this civil action would be limited to the coverage available under a self-insurance policy.

[4] Motion, at 2 (and the deposition testimony cited therein).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at 3.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

slowing down, Corporal Hevelow kept his emergency lights and sirens on and notified others of his actions. [14]

Corporal Hevelow saw Mr. Brown's vehicle again. [15] Another officer, Corporal Breslin, joined the pursuit. [16] Mr. Brown was travelling down Freedom Road toward Route 7. [17] Mr. Brown slowed to a stop because there were cars ahead of him at a red light. [18] Corporal Breslin went around the right side of the Brown vehicle. [19] Corporal Hevelow went to the left of the dividing median, against traffic, towards the intersection. [20] Corporal Hevelow reasoned that it would be unsafe to box in Mr. Brown in case traffic opened up or Mr. Brown charged at the cars ahead of him. [21]

Corporal Hevelow came to a stop on the concrete median. [22] He stopped his car so that it was at a 45 degree angle to Route 7. [23] He intended to stop in the right turn lane of Route 7, not the southbound lane. [24] Corporal Hevelow does not know whether his car was fully in the turn lane or was in the southbound lane. [25] Once the car came to a stop, it appears that Ms. Mathangani hit Corporal Hevelow's car. [26] There appears to be a factual conflict as to whether Corporal Hevelow was moving or stationary when the collision occurred. [27] The Court's review

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at 4.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at 4-5.
[22] *Id.* at 4.
[23] *Id.* at 4-5.
[24] *Id.* at 5.
[25] *Id.*
[26] *Id.*
[27] Response, at 4 (the Court uses the term "appears" as Corporal Aube's deposition testimony indicates that his notes do not necessarily mean that Corporal Hevelow told Corporal Aube that his vehicle was moving, AB060 (Aube, 18:17-19:13)).

of the record did not find an indication that under any scenario Corporal Hevelow was speeding at the time of the collision.

Ms. Mathangani was paying attention to the police cars travelling north, as she was driving south.[28] She claims she was struck by the police car as she was at the intersection of Route 7 and Freedom Road.[29] Ms. Mathangani claims she never saw Corporal Hevelow's car before the collision.[30] Ms. Mathangani claims she did not see any police vehicle prior to the collision.[31]

Corporal Hevelow saw Ms. Mathangani's vehicle veer into the left lane of southbound Route 7 and then back into the right lane and then hit another vehicle that had pulled to the shoulder to avoid the police cars.[32]

The parties agree that the State has a self-insurance program that applies to this accident.[33] The coverage under that insurance is up to $1,000,000.[34]

## THE PARTIES CONTENTIONS

### A. THE DEFENDANTS

Defendants contend that the State Tort Claims Act bars Ms. Mathangani's claims. The Defendants also argue that Corporal Hevelow's actions were protected by the AEVS. Lastly, the Defendants claim that the State has sovereign immunity above the amount in the insurance from the Self-Insurance Program. Defendants agree with Ms. Mathangani that, if there were a judgement in favor of Ms. Mathangani, the State's self-insurance policy would apply in this case and Ms. Mathangani could collect up to $1,000,000.

---

[28] Response, at 6.
[29] *Id.*, at 7
[30] *Id.*
[31] *Id.*
[32] Motion, at 3; Response, at 6.
[33] Motion, at 6; Response, at 13.
[34] *Id.*

## B. MS. MATHANGANI

Ms. Mathangani contends that there is a genuine issue as to material facts regarding whether Corporal Hevelow's conduct constituted gross or wonton negligence. Ms. Mathangani also argues that the State Tort Claims Act and the AEVS do not bar the claim and that the Defendants are liable for Corporal Hevelow's gross negligence and regular negligence. Ms. Mathangani agrees that the Defendants have sovereign immunity for any amount awarded over the limits of liability contained in the Self-Insurance Program.

Because the parties agree that the State has sovereign immunity for any award over $1,000,000, the Court will grant the Defendants judgment on this issue raised in the Motion. The rest of the parties' contentions will be addressed below.

## LEGAL STANDARD

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[35] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[36] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[37] The moving party bears

---

[35] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).

[36] *Id.*

[37] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

6

the initial burden of demonstrating that the undisputed facts support his claims or defenses.[38]  If

the motion is properly supported, then the burden shifts to the non-moving party to demonstrate

that there are material issues of fact for the resolution by the ultimate fact-finder.[39]

## ANALYSIS

### A.  THE STATE TORT CLAIMS ACT

When suing the State and its officers, the plaintiff must satisfy a two-prong test for the

lawsuit to proceed.[40]  First, the plaintiff must overcome the doctrine of sovereign immunity.[41]

Second, the plaintiff must overcome the State Tort Claims Act.[42]

Here, the first prong is not at issue.  The Defendants waived the defense of sovereign

immunity up to the limit of its available insurance coverage.[43]

For the second prong, under the State Tort Claims Act, the State is immune from a

lawsuit if three elements are met:

> Except as otherwise provided by the Constitutions or laws of the United States or of the State of Delaware, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the members of any board, commission, conservation district or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, where the following elements are present:
>
> (1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer,

---

[38] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[39] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[40] *Pauley v. Reinoehl*, 848 A.2d 569, 573 (Del. 2004).
[41] *Id.* at 575-76.
[42] *Id.* at 573.
[43] Motion for Summary Judgment, at 9.

employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence; . . . .[44]

The burden is on the plaintiff to prove that all of the elements are not present.[45] Here, the Court holds that Ms. Mathangani failed to meet her burden.

The parties do not dispute that Corporal Hevelow is a covered employee and acting within his scope of employment. The questions then come down to whether Corporal Hevelow was performing a discretionary act in good faith and the act was done without gross or wanton negligence. Ms. Mathangani contends that there are questions of fact as to whether Corporal Hevelow was grossly negligent or acted in wanton disregard in connection with the accident that occurred on January 28, 2012. In Delaware, gross negligence is a higher level of negligence representing an extreme departure from the ordinary standard of care.[46] "A person acts wantonly when, 'with no intent to cause harm,' he 'performs an act so unreasonable and dangerous' that the person knows or should know that 'there is an eminent likelihood of harm which can result' Wanton conduct is the 'I don't care attitude.'"[47] The Court finds that the facts of this case, when viewed in a light most favorable to Ms. Mathangani, would amount to no more than ordinary negligence. In other words, the Court has determined that no reasonable jury could conclude that Officer Hevelow's conduct represented an extreme departure from the ordinary standard of care

---

[44] 40 DEL. C. § 4001.

[45] *Id.* ("[I]n any civil action or proceeding against the State or a public officer, employee or member of the State, the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.").

[46] *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990); *Doe v. Indian River School Dist.*, 2012 WL 1980562, at *5 (Del. Super. April 11, 2012).

[47] *Thomas v. Bd. Of Educ. Of Brandywine School Dist.*, 759 F.Supp. 477 (D.Del. 2010)(citing to *Hughes ex rel. Hughes v. Christina Sch. Dist.*, 2008 WL 73710 (Del. Super. Jan. 7, 2008)); *see also McCaffrey v. City of Wilmington*, 2016 WL 446946, at * 8 (Del. Feb. 4, 2016).

or that he performed an act so unreasonable and dangerous that he should have known there was an eminent likelihood of harm that would result.

First, Corporal Hevelow's decision to park his police car where he did was an act that arose out of his duty as a police officer. Corporal Hevelow had to determine under police guidelines how to prevent Mr. Brown from fleeing. The Court has held that it is a question of law whether an act is discretionary (*i.e.*, there is no "hard and fast rule") or ministerial (*i.e.*, there is a prescribed rule).[48] For example, the Court may find that a duty is ministerial, but how to carry out the duty is discretionary.[49] Here, Corporal Hevelow's act was discretionary. There were guidelines in place for roadblocks, but there were not ministerial rules that Corporal Hevelow had to follow.[50] Further, Corporal Hevelow had to make his decisions quickly in the course of a police chase, which required him to use his discretion.

Second, Corporal Hevelow acted in good faith and in the belief he was serving the public because he was trying to stop and arrest an alleged car thief.

Third, Ms. Mathangani cannot show that Corporal Hevelow acted with gross negligence. Corporal Hevelow was involved in a pursuit during a police emergency when the car's lights and siren were on– acts, as discussed below, that are most likely privileged under the AEVS. Ms. Mathangani was distracted by the police activity on the street and did not notice the car. Ms. Mathangani hit Corporal Hevelow's stopped car or Corporal Hevelow struck Ms. Mathangani while travelling at a speed less than the posted speed limit. In this factual scenario, Corporal Hevelow, at best, acted negligently and certainly cannot be found to have acted manner that constitutes gross or wonton negligence.

---

[48] 2013 WL 3010719, at *2.
[49] *Id.*
[50] Motion for Summary Judgment, at 12.

Ms. Mathangani cites to a number of other facts to support her claim of gross negligence or wonton disregard in the Response. Ms. Mathangani contends that Corporal Hevelow failed to "slow to a safe speed before proceeding past a stop sign, failure to avoid endangering life and property when exceeding the speed limit, failure to keep his vehicle under control in a crowded residential area around traffic, and other inattentive and/or careless acts and omissions as alleged in" the Complaint.[51] Those facts, however, are not facts related to the cause of the purported accident between Ms. Mathangani and Corporal Hevelow. The facts relied upon by Ms. Mathangani relate to events during the pursuit between Corporal Hevelow and Mr. Brown. None of which resulted in any harm to property or life. The accident was purportedly caused by the location of Corporal Hevelow's vehicle at the end of the pursuit not during the pursuit. Moreover, Ms. Mathangani cannot rely on facts alleged in the Complaint at this stage of the proceedings,[52] and "other inattentive and/or careless acts or omissions" do not rise to the level of gross or wanton negligence.

Based on the facts presented in the Motion and the Response, the Court grants the Motion as to any claim that Corporal Hevelow acted with gross or wanton negligence as to Ms. Mathangani.[53]

Having found that Corporal Hevelow has immunity under the State Tort Claims Act, the Delaware State Police, the Department of Safety and Homeland Security, and the State of Delaware may not be found vicariously liable for Corporal Hevelow's conduct on January 28,

---

[51] Response at 14-15.
[52] Del. Super. R. Civ. P. 56(e).
[53] The Court would note that this conclusion is supported by cases granting summary judgment in favor of the operator of the emergency vehicle under the State Tort Claims Act or similar statute. *See, e.g., Estate of Alberta Rae v. Murphy*, 2006 WL 1067277, at **2-3 (Del. Super. April 19, 2006)(engaging in a review of factual scenarios in other cases to determine that summary judgment was appropriate on the issue of gross negligence); *Sikander v. City of Wilmington*, 2005 WL 1953040, at *5 (Del. Super. July 28, 2005) *aff'd City of Wilmington v. Sikander*, 897 A.2d 767 (Table), 2006 WL 686589 (Del. 2006).

2012.[54]  "The principal has a defense if the agent had a privilege which he properly exercised in the principal behalf."[55]  The Delaware State Police, the Department of Safety and Homeland Security, and the State of Delaware, therefore, cannot be held liable because Corporal Hevelow parked or moved his vehicle in a manner that could have caused a collision with Ms. Mathangani.  Accordingly, the Court grants summary judgment in favor of the Delaware State Police, the Department of Safety and Homeland Security, and the State of Delaware on any claims that assert vicarious liability for the conduct of Corporal Hevelow on January 28, 2012.

### B.  THE AEVS

The Defendants contend that the State Tort Claims Act provides immunity from any and all claims by Ms. Mathangani.  The Court disagrees.  The Court holds that, because the State Tort Claims Act and the AEVS are consistent, the Delaware State Police, the Department of Safety and Homeland Security and the State are not immune from any negligent acts of Corporal Hevelow proven at trial.  Under both, the Delaware State Police, the Department of Safety and Homeland Security and the State – whoever is determined to be the owner of Corporal Hevelow's vehicle – can be liable for Corporal Hevelow's ordinary negligence otherwise not privileged under the AVES.[56]  The Court holds that, because the State Tort Claims Act and the AEVS are consistent, the Delaware State Police, the Department of Safety and Homeland Security and the State cannot assert they are immune from any negligent acts of Corporal Hevelow proven at trial.

The State Tort Claims Act is subject to other laws of the State of Delaware.  There is another Delaware law that applies in this case: the AVES.[57]  The AEVS provides:

---

[54] *Sikander v. City of Wilmington*, 2005 WL 1953040, at *5.
[55] *Id.*
[56] *Pauley v. Reinoehl*, 848 A.2d 569, 572-573 (Del. 2004).
[57] *Id.*

11

(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b) The driver of an authorized emergency vehicle may:

(1) Park or stand, irrespective of the provisions of this chapter;

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(3) Exceed the speed limits so long as the driver does not endanger life or property;

(4) Disregard regulations governing direction of movement or turning in specified directions.

(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals meeting the requirements of this title, except that an authorized emergency vehicle operated as a police vehicle need not make use of such signals.

(d) The driver of an emergency vehicle is not liable for any damage to or loss of property or for any personal injury or death caused by the negligent or wrongful act or omission of such driver except acts or omissions amounting to gross or wilful or wanton negligence so long as the applicable portions of subsection (c) of this section have been followed. The owner of such emergency vehicle may not assert the defense of governmental immunity in any action on account of any damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of such driver or owner.

(e) Authorized emergency vehicles within the meaning of this chapter mean vehicles of a fire department, police vehicles, ambulances, vehicles used by a fire chief, deputy fire chief, assistant fire chief, chief engineer or fire police officer of any duly organized fire company in the performance of those duties, the vehicle of the State Forester in the performance of the State Forester's duties, the vehicle of the Forest Fire Control Supervisor in the performance of the Forest Fire Control Supervisor's duties, the vehicles of the State Emergency Response Team in the performance of its duties and emergency vehicles of state, federal, county or municipal departments or public service corporations as are designated or authorized by the Secretary of Safety and Homeland Security.[58]

Under the clear holding of *Pauley v. Reinoehl*: (i) Corporal Hevelow—the driver of a police car—is only personally liable under the AEVS for injuries caused by conduct that amounts to gross or wilful or wonton negligence; and (ii) the Delaware State Police, the Department of

---

[58] 18 Del. C. § 6511.

Safety and Homeland Security and the State — the owners of the police car— are liable for Corporal Hevelow's ordinary negligence under the AEVS. At the hearing, the Defendants argued that the holding in *Pauley v. Reinoehl* is not dispositive. Even after reviewing supplemental material offered by the Defendants, the Court finds that *Pauley v. Reinoehl* controls as it involves a similar factual scenario and legal situation as that presented here.

As explained above, the Court finds that there is no genuine issue as to a material fact on whether Corporal Hevelow acted with gross or wonton negligence at the end of the pursuit of Mr. Brown. Moreover, most if not all of Corporal Hevelow's actions appear to be privileged under the AEVS. Corporal Hevelow was in pursuit of an actual violator, Mr. Brown, of the law. Corporal Hevelow had his emergency lights and siren on at all relevant times. During the pursuit, Corporal Hevelow may have committed each of the acts enumerated in 18 *Del. C.* § 6511(b) but he did so while always keeping on his emergency lights and siren. The Court, therefore, finds that there exists no genuine issue as to a material fact and that Corporal Hevelow is entitled to judgment as a matter of law under the AEVS as to the claims asserted by Ms. Mathangani.

The Court does believe that, viewing the facts in a light most favorable to Ms. Mathangani, a question of fact for the jury remains as to whether Corporal Hevelow acted with ordinary negligence in a manner that may not be immune under the AEVS. As such, the Court will grant the Motion as to Corporal Hevelow, but deny it as it relates to the Delaware State Police, the Department of Safety and Homeland Security and the State.

13

**CONCLUSION**

For the above reasons, **IT IS HEREBY ORDERED** that the Motion for Summary

Judgment is **GRANTED in part and DENIED in part** as more specifically set forth in this

opinion.

Dated: June 27, 2016
Wilmington, Delaware

/s/ *Eric M. Davis*
Eric M. Davis, Judge