**Lt. Col. Keith JANOWSKI, U.S. Army, Plaintiff Below, Appellant,**

v.

**DIVISION OF STATE POLICE, DEPARTMENT OF SAFETY AND HOMELAND SECURITY, STATE of Delaware, Defendant Below, Appellee.**

**No. 175, 2009.**

Supreme Court of Delaware.

Submitted: Sept. 2, 2009.

Decided: Sept. 29, 2009.

---

6. *Waters v. Div. of Fam. Servs.*, 903 A.2d 720, 727 (Del.2006).

7. *Id.*

8. *Id.* (noting that reunification services are not required in cases of abandonment).

9. Del.Code Ann. tit. 13, § 1103(a)(5)(a)(1).

Thomas S. Neuberger (argued) and Stephen J. Neuberger, The Neuberger Firm, P.A., Wilmington, DE for appellant.

Jennifer D. Oliva, Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the court en banc.

STEELE, Chief Justice:

We address, on first impression in Delaware, whether the General Assembly explicitly waived sovereign immunity from suit by military reservists for reemployment rights. Former state trooper, Keith Janowski, asserts that the State [1] violated state and federal statutes, by terminating his employment when he returned from active military duty. He urges us, in the face of state constitutional protections against inadvertent waiver, to include the State within the plain meaning of the statutory term "any employer." [2]

Janowski appeals the trial judge's grant of the State's motion to dismiss pursuant to Superior Court Civil Rule 12(b)(1), this action for employment discrimination. [3] He claims that the State denied him employment rights guaranteed by 29 *Del. C.* § 5105 and the Uniformed Service Employment and Reemployment Rights Act of 1994 (USERRA). [4] The State responds that its sovereign immunity bars Janowski's claim. Because the trial judge correctly held that neither 20 *Del. C.* § 905, nor 29 *Del. C.* § 5105 explicitly waives sovereign immunity, as the Delaware Constitution and USERRA require, we **AFFIRM.**

## FACTUAL AND PROCEDURAL BACKGROUND

The Division of State Police employed Janowski as a state trooper from January 28, 1989 until April 20, 2005. Throughout his tenure, Janowski served in the United States Army Reserve. On April 15, 2002, Janowski arrested an individual for driving under the influence. Because of an inadequate search, he failed to discover two knives and a small caliber handgun until he placed the suspect in a holding cell.

The DSP charged Janowski with violating a DSP Rule and Regulation. Janowski elected to have a Superintendent's Hearing, after which the DSP imposed a penalty in the form of a 64–hour suspension, one-year probation, and officer safety training coursework, effective July 16, 2002. Three months later, the Army called Janowski to active duty. The Superintendent notified Janowski that his

---

1. Respondents include the Division of State Police, the Department of Safety and Homeland Security, and the State of Delaware (collectively, the State).

2. 20 *Del. C.* § 905(a).

3. *Janowski v. Div. State Police, Dept. Safety and Homeland Security, State of Del.,* 2009 WL 537051 (Del.Super.Feb.27, 2009).

4. 38 U.S.C. §§ 4301 *et seq.* Janowski's claims under USERRA include 38 U.S.C. §§ 4311(a) benefit discrimination; 4313 reemployment position violation; 4316(c) just cause violation; and 4316(a) seniority rights violation.

one year probationary period would toll during military duty.[5]

Janowski returned to the DSP on November 5, 2003, under probation that would have lasted until July 2004. On February 15, 2004, however, he arrested another individual for driving under the influence and arranged for another trooper to transport the vehicle's passenger to Troop 1. Janowski then searched the vehicle, where he found two knives and a handgun, but did not relay this information to anyone until after he returned to Troop 1. While searching the passenger at Troop 1, Janowski failed to locate a pack of cigarettes, a butane lighter, toothpicks, a dime bag of cocaine, chapstick, a roll of lifesavers, and a keychain with numerous keys.

The DSP charged Janowski with violating DSP Rule and Regulation # 1 for failure to search the passenger properly, and Job Performance Standard # 12 for failure to notify Troop 1 and the transporting officer that the passenger could be armed and dangerous. Janowski elected to have a hearing before the Divisional Trial Board, which unanimously decided to terminate his employment. On appeal, the Secretary of the Department of Safety and Homeland Security affirmed the Board's decision to terminate employment.

The United States Attorney General declined Janowski's request to bring an action under USERRA. Approximately two years later, Janowski filed a complaint in Superior Court.

## STANDARD OF REVIEW

■■ We review this legal question of statutory interpretation *de novo*.[6] We determine subject matter jurisdiction from the face of the complaint at the time of filing and assume that all material factual allegations are true.[7] As the plaintiff, Janowski must establish that Delaware courts have jurisdiction over his claim.[8]

## ANALYSIS

■■ The Delaware Constitution protects the State against inadvertent waiver of its sovereign immunity.[9] The State retains this immunity, granted under the federal Constitution,[10] unless the General Assembly expressly manifests its consent to liability.[11] We will construe any reasonable doubt about the General Assembly's intent to waive sovereign immunity in favor of the State.[12]

5. Janowski argues that DSP illegally tolled his probation and, therefore, should have reemployed him under normal disciplinary status. Because we affirm the trial judge's dismissal for lack of subject matter jurisdiction, we do not address this claim.

6. *Del. Bay Surgical Servs., PC v. Swier*, 900 A.2d 646, 652 (Del.2006).

7. *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 590 (Del. 1970); *Stidham v. Brooks*, 5 A.2d 522, 524 (Del.1939) (stating that "jurisdiction of the subject matter of any controversy in any court must be determined in the first instance by the allegations of the complaint").

8. *S.L. v. A.L.*, 735 A.2d 433 (Del.Fam.Ct. 1999); *Wilmington Fraternal Order of Police Lodge # 1 v. Bostrom*, 1999 WL 39546 (Del. Ch. Jan.22, 1999).

9. "Suits may be brought against the State, according to such regulations as shall be made by law." Del. Const. art. I, § 9.

10. U.S. Const. amend. XI.

11. *State v. Sheppard*, 864 A.2d 929, 2004 WL 2850086, at *1 (Del. Dec.10, 2004) (TABLE); *Doe v. Cates*, 499 A.2d 1175, 1176 (Del.1985), citing *Shellhorn & Hill v. State*, 187 A.2d 71, 74–75 (Del.1962).

12. *Doe*, 499 A.2d at 1180, citing *Dept. of Cmty. Affairs v. M. Davis & Sons, Inc.*, 412 A.2d 939, 942 (Del.1980).

### 1. USERRA does not Abrogate Eleventh Amendment Sovereign Immunity.

■ Even where a state has chosen not to, Congress may abrogate Eleventh Amendment sovereign immunity through legislation. In *Alden v. Maine*, however, the Supreme Court of the United States held that Congress could not abrogate a state's sovereign immunity under its Article I powers.[13] The Court affirmed the Maine state court's dismissal of an action brought pursuant to the Fair Labor Standards Act of 1938, because the state had not consented to the suit. Two years later, the Alabama Supreme Court applied *Alden* to USERRA, holding that that legislation could not abrogate state sovereign immunity, because Congress passed that law pursuant to its Article I, Section 8 war powers.[14] We agree with the Alabama Supreme Court's analysis.

■ Although USERRA does not abrogate the State's sovereign immunity, that legislation does allow the United States Attorney General the discretion to prosecute purported violations. Where, as here, the Attorney General declines to prosecute a case the individual plaintiff may proceed "in accordance with the laws of the State."[15] The laws of our State include our General Assembly's determinations about whether, when, and under what circumstances to waive sovereign immunity explicitly. Janowski must, therefore, demonstrate that the General Assembly intended to waive sovereign immunity explicitly under the circumstances here presented.

### 2. The General Assembly did not Intend to Waive Sovereign Immunity Explicitly.

Janowski asserts that we have jurisdiction and his suit may proceed, because the State waived sovereign immunity. He requests that we rely on the 'plain meaning' of § 905 and read our statutes, as well as USERRA, *in pari materia*. Under this interpretation, USERRA and 29 *Del. C.* § 5105(a) create legal rights, and 20 *Del. C.* § 905 creates a remedy. The right to which he refers allows reservists to retain enumerated benefits upon reemployment. The latter statute creates a right of action against "any employer,"[16] allegedly including the State.

Janowski's proposed interpretation results in a combination of rights and remedies, and an interchange of definitions. Although § 905 contains no definition of 'employer,' Janowski asserts that § 5105 waives the State's sovereign immunity, by expressly including the State as an "employer." Janowski concludes that the trial judge erred by conducting the sovereign immunity analysis of § 905 independently and without reference to these other statutes.

We will consider the trial judge's reading of both the plain and contextual meanings of § 905. A brief examination of other statutes demonstrates the General Assembly's ability to waive sovereign im-

---

13. 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999).

14. *Larkins v. Dept. of Mental Health and Mental Retardation*, 806 So.2d 358, 362–63 (Ala. 2001).

15. 38 U.S.C. § 4323(b)(2).

16. "If any employer fails to comply with any provisions of federal or state law relating to employment rights of reservists or National Guard members, the employee may elect to bring an action at law for damages for such noncompliance or such other relief as is appropriate in the Superior Court of Delaware." 20 *Del. C.* § 905(a).

munity explicitly, and why they did not do so here.

■ Delaware's Whistleblower Protection Act waives sovereign immunity by defining employer as "any department, agency ... of the state." [17] In *Pauley v. Reinoehl*, we held that the Emergency Vehicle Statute's provision that "[t]he owner of such emergency vehicle may not assert the defense of governmental immunity in any action ..." [18] waives sovereign immunity to the extent of the State's insurance.[19]

Here, Janowski has not demonstrated that the General Assembly clearly intended to waive sovereign immunity. Although § 5105 describes reservists' reemployment rights, it does not include a right to sue the State.[20]

■ The trial judge held that §§ 905 and 5105 lack the "clarity and precision" required to waive sovereign immunity.[21] To the extent that any reasonable doubt exists, we construe the General Assembly's intent in favor of the State. When we do here, we arrive at the same conclusion as did the trial judge. By doing so, we also encourage the General Assembly's practice

of *explicitly* waiving, when it intends to do so, the State's sovereign immunity. Delaware's Constitution, state sovereignty, and prudential policy all counsel against permitting inadvertent waivers of Eleventh Amendment sovereign immunity.

Reading the Delaware statutes and USERRA *in pari materia* fails to overcome the lack of subject matter jurisdiction. Once the United States Attorney General has declined to prosecute a case under USERRA, the statute allows the individual claimant to proceed, subject to compliance with the "laws of the state." The laws of this State simply do not permit Janowski to proceed.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the trial judge's dismissal for lack of subject matter jurisdiction.

---

**17.** *Tomei v. State*, 902 A.2d 757, 763 (Del.Super.2006), quoting 19 *Del. C.* § 1702.

**18.** 21 *Del. C.* § 4106(d).

**19.** 848 A.2d 569, 572 (Del.2004).

**20.** *Janowski*, 2009 WL 537051, at *8.

**21.** *Id.* at *2.