## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CARLITA LAWS and | ) | |
| CHARLES LAWS, II, individually | ) | |
| and as Administrators of the Estate | ) | |
| of CHARLES LAWS, III, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. N17C-01-414 ALR |
| | ) | |
| VALORIE HANDY, and | ) | |
| HANDY'S LITTLE DISCIPLES, | ) | |
| and BOLARIUS HANDY, and | ) | |
| DELAWARE DEPARTMENT | ) | |
| OF SERVICES FOR CHILDREN, | ) | |
| YOUTH, AND THEIR FAMILIES, | ) | |
| OFFICE OF CHILD CARE | ) | |
| LICENSING, and | ) | |
| VIVIAN MURPHY | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: May 1, 2017
Decided: July 21, 2017

### MEMORANDUM OPINION

*Upon State Defendants' Motion to Dismiss*
**GRANTED IN PART and DENIED IN PART**

**ROCANELLI, J.**

This is a wrongful death case arising from the death of 10-month-old Charles Laws, III ("Baby Charles") on January 28, 2015 at Handy's Little Disciples Home Daycare Center ("Daycare Center"), operated by Defendant Valorie Handy at a residence owned by Ms. Handy's husband, Defendant Bolarius Handy. Baby Charles was under Ms. Handy's supervision when Ms. Handy gave Baby Charles a lethal dose of Benadryl. Baby Charles died as a result of the medication administered by Ms. Handy.[1]

This civil action is brought by Baby Charles' parents and estate ("Plaintiffs"). In addition to claims of negligence and wrongful death against the Handys, Plaintiffs assert claims of gross and wanton negligence against the Delaware Department of Services for Children, Youth and Their Families, Office of Child Care Licensing ("Licensing Entity"), and Supervisor of Childcare Licensing Vivian Murphy ("Licensing Supervisor"). Specifically, Plaintiffs allege that the Licensing Entity and Licensing Supervisor caused Baby Charles' death by acting with gross and wanton negligence in licensing, certifying, and supervising Ms. Handy to operate

---

[1] Ms. Handy is committed to the custody of the Department of Correction as a result of a criminal conviction for Criminally Negligent Homicide (Cr. Id. No. 1507011730) arising from the January 28, 2015 death of Baby Charles. Ms. Handy was found Guilty by a jury of this lesser-included offense of the charged crime of Murder by Abuse or Neglect First Degree, and has a good time release date of March 28, 2019.

the Daycare Center. (For ease of reference, the Court refers to the Licensing Entity and Licensing Supervisor collectively as "State Defendants.")

The State of Delaware has appeared on behalf of State Defendants and has filed the Motion to Dismiss that is currently before the Court. Plaintiffs oppose State Defendants' Motion to Dismiss. To date, neither Ms. Handy[2] nor Mr. Handy[3] have filed a response to the Motion to Dismiss. This is the Court's Memorandum Opinion on State Defendants' Motion to Dismiss.

## I.  FACTUAL BACKGROUND

Baby Charles was born on March 16, 2014 and resided with Plaintiffs in Millsboro, Delaware. Plaintiffs placed Baby Charles in the Daycare Center during the workweek. On January 28, 2015, Plaintiffs left Baby Charles at the Daycare Center under Ms. Handy's supervision. Later that day, Ms. Handy administered a large dose of Benadryl to Baby Charles. Ms. Handy did not have legal authority to administer over-the-counter mediation and did not have the permission of Baby Charles' parents. Baby Charles died of diphenhydramine intoxication resulting from a Benadryl overdose.

---

[2] Ms. Handy has not appeared in this action, although the record reflects that Ms. Handy has been served with process.

[3] Mr. Handy has appeared in this action as a self-represented litigant and requested an extension to respond to the Complaint in order to consult with an attorney. The Court granted Mr. Handy's request for an extension to answer or otherwise respond, but Mr. Handy has not yet responded to the Complaint and counsel has not appeared on his behalf.

Unbeknownst to Plaintiffs, another infant had been seriously injured under Ms. Handy's care prior to Baby Charles' death. Specifically, two-month-old Jarod Coursey ("Baby Jarod") sustained permanent brain damage from shaken-baby syndrome while under Ms. Handy's supervision in 2001. Baby Jarod's injuries included subdural hematoma, retinal hemorrhaging, and cardiopulmonary arrest. Baby Jarod currently leads a life of total dependence as a result of the 2001 incident.[4]

Plaintiffs allege that State Defendants acted with gross and wanton negligence in licensing Ms. Handy to provide childcare pursuant to Delaware law and by failing to supervise the Daycare Center following the 2001 incident involving Baby Jarod.

## II.    APPLICABLE LAW AND LEGAL STANDARDS

State Defendants argue that Plaintiffs' cause of action against State Defendants is barred by sovereign immunity and Section 4001 of the State Tort Claims Act ("Section 4001").[5] In addition, State Defendants assert that Plaintiffs claims against State Defendants are barred by the public duty doctrine.

---

[4] Ms. Handy was found Not Guilty of Assault by Abuse in connection with the 2001 incident involving Baby Jarod (Cr. Id. No. 0109011510).
[5] 10 *Del. C.* § 4001.

## A.   Superior Court Civil Rules 12(b)(1) & 12(b)(6).

State Defendants have moved to dismiss the Complaint pursuant to Superior Court Civil Rule 12(b)(1) for lack of subject matter jurisdiction. Rule 12(b)(1) requires the Court to grant a motion to dismiss whenever it appears that the Court lacks jurisdiction over the claims asserted in the complaint.[6] "Notably, '[t]he burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention.'"[7] In considering a motion under Rule 12(b)(1), "the Court need not accept Plaintiffs' factual allegations as true and is free to consider facts not alleged in the complaint."[8]

State Defendants have also moved to dismiss the Complaint pursuant to Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) must be decided solely on the allegations set forth in the complaint.[9] Unlike the standards for a motion to dismiss under Rule 12(b)(1), the Court shall accept all well-pleaded allegations in the Complaint as true

---

[6] *See* Super. Ct. Civ. R. 12(b)(1); Super. Ct. Civ. R. 12(h)(3).

[7] *Airbase Carpet Mart., Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Dec. 15, 2015) (alteration in original) (citing *Ropp v. King*, 2007 WL 2198771, at *2 (Del. Ch. July 25, 2007)). *See also Appriva S'holder Litig. Co. v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) ("The burden is on the Plaintiffs to prove jurisdiction exists.").

[8] *Appriva*, 937 A.2d at 1275 n.14 (quoting *Phillips v. Cty. of Bucks*, 1999 WL 600541, at *1 (E.D. Pa. Aug. 9, 1999)).

[9] *Walls v. Williams*, 2006 WL 1133563, at *1 (Del. Super. Mar. 28, 2006).

and make all reasonable inferences in favor of the non-moving party.[10]  Factual allegations, even if vague, are well-pleaded if they provide notice of the claim to the other party.[11]  The Court should deny the motion to dismiss if the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[12]

## B.     The Doctrine of Sovereign Immunity.

The Licensing Entity is eligible for sovereign immunity, which bars a lawsuit against the state or federal government in the absence of express consent from the legislature.[13]  Delaware courts are not empowered to disregard the doctrine of sovereign immunity.[14]  Rather, sovereign immunity must be waived pursuant to a clear manifestation of intent by the General Assembly.[15]  The Delaware Supreme Court has found that the State waives sovereign immunity "to the extent that either

---

[10] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998); *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[11] *Spence*, 396 A.2d at 968.

[12] *Id.*

[13] *See* U.S. CONST. amend. XI; DEL. CONST. art. 1, § 9; *Sherman v. State*, 133 A.3d 971, 975 (Del. 2016) (quoting *Pauley v. Reinoehl*, 848 A.2d 569, 573 (Del. 2004)); *Janowski v. Div. of State Police*, 981 A.2d 1166, 1169 (Del. 2009) (internal citations omitted).

[14] *Pajewski v. Perry*, 363 A.2d 429, 433 (Del. 1976) (citing *Shellhorn & Hill, Inc. v. State*, 187 A.2d 71, 74 (Del. 1962)).

[15] *Hartmann v. Sibbold*, 2010 WL 3397482, at *1 (Del. Aug. 30, 2010) (internal citations omitted); *Del. Dep't of Health & Soc. Servs. v. Sheppard*, 2004 WL 2850086, at *1 (Del. Dec. 10, 2004) (citing DEL. CONST. art. 1, § 9); *Pauley*, 848 A.2d at 573 (internal citations omitted).

the State insurance program was funded by direct appropriation (self-insurance) or that the State purchased commercially available insurance to cover the loss."[16]

## C.     Section 4001 of the State Tort Claims Act.

Section 4001 shields State employees,[17] such as the Licensing Supervisor, from civil liability if the State employee's conduct (i) arose out of and in connection with the performance of official duties involving the exercise of discretion, (ii) was performed in good faith, and (iii) was performed without gross or wanton negligence.[18]  Plaintiffs must establish the absence of only one of these elements to defeat qualified immunity under Section 4001.[19]

## D.     The Delaware Child Care Act.

The Delaware Child Care Act ("DCCA")[20] authorizes State Defendants to license, regulate, and supervise any person or organization providing childcare

---

[16] *Sherman*, 133 A.3d at 975 (quoting *Pauley*, 848 A.2d at 573).

[17] For the purposes of this case, Section 4001 will not be analyzed with respect to the Licensing Entity because sovereign immunity has not been waived.  Therefore, it is not necessary to reach the question of whether qualified immunity under Section 4001 applies to the Licensing Entity. *See infra* Part III(A).

[18] 10 *Del. C.* § 4001; *Christman v. Dep't of Health & Soc. Servs.*, 2014 WL 3724215, at *3 (Del. July 25, 2014) (quoting *Jackson v. Minner*, 2013 WL 4538321, at *1 (Del. Aug. 23, 2013)). *See also Hughes ex rel. Hughes v. Christiana Sch. Dist.*, 2008 WL 2083150, at *2 (Del. May 19, 2008) ("In other words, Section 4001 provides immunity to discretionary acts committed in good faith, in the course of the performance of official duties and without gross or wanton negligence.").

[19] *J.L. v. Barnes*, 33 A.3d 902, 914 (Del. Super. 2001) (citing 10 *Del. C.* § 4001); *Minner*, 2013 WL 4538321, at *1.

[20] 31 *Del. C.* § 341 et seq.

services in the State of Delaware.[21] Child caretakers and daycare facilities are required by DCCA to obtain a license from State Defendants prior to offering childcare services.[22] DCCA requires State Defendants to conduct a "thorough investigation" before issuing a childcare license to ensure that the applicant meets certain DCCA standards.[23] In addition, Delaware law imposes a duty on the Department of Services for Children, Youth and Their Families to monitor residential and nonresidential childcare facilities, including daycare centers and family daycare homes.[24]

## E.    The Public Duty Doctrine.

The judicially-created public duty doctrine bars certain claims against State officials that arise from discretionary conduct.[25] The public duty doctrine applies if the State official owes a duty to the public at large rather than to a specific individual when the alleged tortuous conduct is discretionary in nature.[26] To the extent that Plaintiffs' claims arise from the discretionary acts of State Defendants, the claims are barred by the public duty doctrine unless Plaintiffs can establish (i) an

---

[21] *Id.* at § 343.
[22] *Id.* at § 344(a).
[23] *See id.* at § 344(b)–(c); 9 Del. Admin. C. § 101-1.0. et seq.
[24] 29 *Del. C.* § 9003(7).
[25] *J.L.*, 33 A.3d at 916; *Higgins v. Walls*, 901 A.2d 122, 143 (Del. Super. 2005) (citing *Johnson v. Indian River Sch. Dist.*, 723 A.2d 1200, 1203 (Del. Super. 1998)).
[26] *See Jackson v. Minner*, 2013 WL 871784, at *3–4 (Del. Super. Mar. 1, 2014), *aff'd*,  2013 WL 4538321 (Del. Aug. 23, 2013); *Castellani v. Del. State Police*, 751 A.2d 934, 938–39 (Del. Super. 1999), *aff'd*, 1999 WL 1319361 (Del. Dec. 9, 1999).

assumption of an affirmative duty to act by State Defendants; (ii) knowledge that inaction by State Defendants could lead to harm; (iii) some form of direct contact between State Defendants and the injured party; and (iv) justifiable reliance by Plaintiffs on an affirmative undertaking by State Defendants.[27]

## III.   DISCUSSION

### A.   The Doctrine of Sovereign Immunity Bars this Lawsuit against the Licensing Entity.

Plaintiffs have the burden of establishing jurisdiction over the Licensing Entity[28] by overcoming the doctrine of sovereign immunity.  In this case, Plaintiffs assert that sovereign immunity does not apply to the Licensing Entity because Section 4001 constitutes a "black-letter"[29] exception to sovereign immunity for grossly negligent acts.  However, "[g]rossly negligent acts *per se* and the State Tort Claims comes (sic) into play only *after* an express intent to waive sovereign immunity has been identified."[30]  In other words, allegations of gross negligence under Section 4001 are insufficient to overcome the Licensing Entity's sovereign immunity without an independent waiver of immunity.

---

[27] *Minner*, 2013 WL 871784, at *4 (quoting *Castellani*, 751 A.2d at 938).

[28] *Appriva*, 937 A.2d at 1275 n.14.

[29] Pls.' Resp. State's Mot. Dismiss at 7.

[30] *Sheppard*, 2004 WL 2850086, at *1 (emphasis in original). *See also Parker v. Wireman*, 2012 WL 1536934, at *1 (Del. Super. Apr. 30, 2012) (citing *J.L.*, 33 A.3d at 913).

Plaintiffs cannot establish that the State has waived sovereign immunity as to the Licensing Entity for the allegations set forth in Plaintiffs' Complaint. Accordingly, Plaintiffs cannot meet the threshold requirement for this cause of action to proceed against the Licensing Entity. The Court finds that the Motion to Dismiss must be granted as to the Licensing Entity pursuant to Rule 12(b)(1) and the doctrine of sovereign immunity.

**B.      The Licensing Supervisor is Eligible for Qualified Immunity under Section 4001 and the Protection of the Public Duty Doctrine but the Lawsuit May Proceed Against the Licensing Supervisor.**

Because the Licensing Supervisor is a State official acting in the scope of her employment for the Licensing Entity, the Licensing Supervisor is eligible for qualified immunity under Section 4001. Moreover, the Licensing Supervisor is a public official who is eligible for the protections of the public duty doctrine. Upon consideration of Section 4001 and the public duty doctrine, as well as the current record, the Court declines to dismiss Plaintiffs' claims against the Licensing Supervisor as a matter of law.

**i.      Plaintiffs state claims upon which relief may be granted against the Licensing Supervisor under Section 4001.**

Plaintiffs are required to establish one of three possible avenues of relief in order to defeat the Licensing Supervisor's qualified immunity under Section 4001:[31]

---

[31] *See supra* n. 20.

(i) ministerial action; (ii) bad faith; or (iii) gross negligence.[32] Accepting all well-pleaded allegations as true and making all reasonable inferences in favor of Plaintiffs, there is a reasonably conceivable set of circumstances susceptible to proof under which Plaintiffs could defeat the Licensing Supervisor's qualified immunity.

With respect to Section 4001(1), the Court cannot determine whether the decision to issue a license to Ms. Handy constitutes a discretionary act. An act is discretionary where "there is no hard and fast rule as to [the] course of conduct that one must or must not take."[33] In contrast, an act is non-discretionary or ministerial "if the act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act."[34] Ministerial acts "typically involve conduct directed by mandatory rules or policies."[35] Here, the record does not indicate whether the Licensing Entity maintains mandatory policies for issuing a childcare license, and, if so, whether those policies were observed when the daycare license was issued to Ms. Handy. Accepting all well-pleaded allegations as true, there is a reasonably conceivable set of circumstances under which the decision to issue a childcare license is subject to mandatory rules or policies. Accordingly, the Court cannot

---

[32] *See* 10 *Del. C.* § 4001(1)–(3).
[33] *J.L.*, 33 A.3d at 914 (alteration in original).
[34] *Hughes ex rel. Hughes*, 2008 WL 2083150, at *3 (quoting *Sussex Cty. v. Morris*, 610 A.2d 1354, 1358–59 (Del. 1992)).
[35] *J.L.*, 33 A.3d at 914 (citing *Knoll v. Wright*, 1988 WL 71466 (Del. June 29, 1988)).

dismiss Plaintiffs' claims against the Licensing Supervisor as arising from an act of discretion under Section 4001(1).

With respect to Section 4001(3), the Court cannot determine whether the Licensing Supervisor was grossly negligent in issuing a daycare license to Ms. Handy. Gross negligence is a heightened standard of ordinary negligence that is defined as "an 'extreme departure from the ordinary standard of care' that 'signifies more than ordinary inadvertence or inattention.'"[36] The Delaware Supreme Court has equated gross negligence to criminal negligence under Delaware's criminal code,[37] characterizing the applicable standard as the failure "to perceive a risk . . . of such nature that failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[38] "Ordinarily, questions of gross negligence and willful or wanton conduct are for the jury and are not susceptible of summary adjudication."[39]

Here, accepting the well-pleaded allegations as true, Plaintiffs have stated a claim upon which relief may be granted regarding the Licensing Supervisor's decision to issue a daycare license to Ms. Handy following the 2001 incident

---

[36] *Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1199 (Del. 2015) (internal citations omitted).

[37] *Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987).

[38] 11 *Del. C.* § 231.

[39] *Brown v. United Water Del., Inc.*, 3 A.3d 272, 276 (Del. 2010) (citing *Pauley*, 848 A.2d at 576).

11

involving Baby Jarod. Plaintiffs may be able to establish that the Licensing Supervisor's decision was a gross deviation from the licensing and supervision requirements set forth under DCCA.[40] Moreover, the Court cannot determine if the decision to issue Ms. Handy's license was "the result of something being undiscoverable, mere negligence, or a pattern of institutional indifference amounting to wanton negligence on the part of [a State employee]."[41] Accepting all well-pleaded allegations as true, the Court finds a reasonably conceivable set of circumstances susceptible to proof under which the Licensing Supervisor acted with gross negligence by issuing a daycare license to Ms. Handy after the 2001 incident involving Baby Jarod. Accordingly, the Court cannot dismiss Plaintiffs' claims against the Licensing Supervisor as a matter of law under Section 4001(3).

State Defendants assert that Plaintiffs fail to specify the actions by the Licensing Supervisor which support a claim of gross negligence.[42] This Court disagrees. First, even if Plaintiffs fail to plead gross negligence with the requisite particularity, the Court cannot dismiss Plaintiffs' claims under Section 4001 as a matter of law without determining whether the alleged conduct is discretionary or ministerial in nature. In addition, the Complaint contains thirty-four separate

---

[40] *See* 31 *Del. C.* § 344(b)–(c); 9 Del. Admin. C. § 101-1.0. et seq.
[41] *McCaffrey v. City of Wilmington*, 133 A.3d 536, 557 n.23 (Strine, C.J., dissenting).
[42] *See* Super. Ct. Civ. R. 9(b) ("In all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity.").

instances specifying the alleged gross indifference with which the Licensing Supervisor licensed and/or failed to supervise Ms. Handy and the Daycare Center. Accepting these allegations as true, the Court is satisfied that Plaintiffs have adequately alleged "an extreme departure from the ordinary standard of care"[43] to avoid summary disposition of their claims at the pleading stage. Moreover, the Court finds that State Defendants have sufficient notice of the "act or omissions by which it is alleged that a duty has been violated in order to enable the preparation of a defense,"[44] and that the Complaint alerts the Licensing Supervisor to her potential liability[45] without merely making a "general statement of the facts which admits of almost any proof to sustain it."[46]

Accepting the well-pleaded allegations in the Complaint as true with all reasonable inferences made in favor of Plaintiffs, dismissing the claims against the Licensing Supervisor is not appropriate as a matter of law under Section 4001. This conclusion is not a final determination regarding the Licensing Supervisor's actions or a finding of gross or wanton negligence. Rather, the Court finds that there is a

---

[43] *Hecksher*, 115 A.3d at 1199.
[44] *Doe 30's Mother v. Bradley*, 58 A.2d 429, 443 (Del. Super. 2012) (quoting *State Farm Fire & Cas., Co. v. Gen. Elec. Co.*, 2009 WL 5177156, at *5 (Del. Super. Dec. 1, 2009)). *See also Ruof v. Dilks*, 2015 WL 5438698, at *2 (Del. Super. June 16, 2015) ("Rule 9(b) ensures that a defendant is put on sufficient notice so that it may defend itself against a plaintiff's allegations.") (internal quotation omitted).
[45] *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990).
[46] *Id.* (quoting *Mancino v. Webb*, 274 A.2d 711, 713 (Del. Super. 1971)).

reasonably conceivable set of circumstances susceptible to proof where Plaintiffs could satisfy the applicable standard to overcome the Licensing Supervisor's qualified immunity under Section 4001. Therefore, the Court cannot dismiss Plaintiffs' claims against the Licensing Supervisor as a matter of law under Section 4001.[47]

### ii. Plaintiffs state claims upon which relief may be granted against the Licensing Supervisor under the public duty doctrine.

To the extent that the allegations against the Licensing Supervisor relate to an exercise of discretion, the public duty doctrine *may* preclude Plaintiffs' claims.[48] However, the public duty doctrine would not apply to claims against the Licensing Supervisor arising from ministerial conduct.[49] Accepting the well-pleaded allegations in Plaintiffs' Complaint as true, the record is insufficient to determine whether the Licensing Supervisor's actions were discretionary, and there is a reasonably conceivable set of circumstances susceptible to proof under which the decision to issue a daycare license to Ms. Handy was ministerial. Because the Court

---

[47] *See Hale v. Elizabeth W. Murphey Sch., Inc.*, 2014 WL 2119652, at *5–6 (Del. Super. May 20, 2014).

[48] As previously discussed, Plaintiffs could proceed under the public duty doctrine for discretionary conduct if Plaintiffs establish (i) an assumption of an affirmative duty to act; (ii) knowledge that inaction could lead to harm; (iii) some form of direct contact between State Defendants and the injured party; and (iv) justifiable reliance on an affirmative undertaking by State Defendants. *Minner*, 2013 WL 871784, at *4 (quoting *Castellani*, 751 A.2d at 938).

[49] *J.L.*, 33 A.3d at 916 (internal citations omitted).

14

cannot determine the applicability of the public duty doctrine on the current record, the Court declines to dismiss Plaintiffs' claims against the Licensing Supervisor as a matter of law on this basis.

### III.   CONCLUSION

Plaintiffs fail to establish jurisdiction over the Licensing Entity under the doctrine of sovereign immunity. Accordingly, the Licensing Entity must be dismissed as a party pursuant to Rule 12(b)(1). However, the Court hereby finds that, accepting all well-pleaded allegations as true and viewing the Complaint in a light most favorable to Plaintiffs, Plaintiffs state a claim upon which Plaintiffs could recover against the Licensing Supervisor. Therefore, the Court declines to dismiss the claims against the Licensing Supervisor as a matter of law pursuant to Rule 12(b)(6).

**NOW, THEREFORE, this 21st day of July, 2017, State Defendants' Motion to Dismiss is hereby GRANTED IN PART and DENIED IN PART. The Delaware Department of Services for Children, Youth and Their Families, Office of Child Care Licensing is dismissed as a party to this action. Plaintiffs' claims against Supervisor of Childcare Licensing Vivian Murphy may proceed.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**

15