**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

**E. SCOTT BRADLEY**
*JUDGE*

**SUSSEX COUNTY COURTHOUSE**
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

November 14, 2019

Reann Warner, Esquire
Jacobs & Crumplar, P.A.
750 Shipyard Drive, Ste 200
Wilmington, DE 19801

Kevin J. Connors, Esquire
Marshall Dennehey Warner Coleman
& Goggin
Nemours Building
1007 N. Orange Street, Ste. 600
P.O. Box 8888
Wilmington, DE 19899

James H. McMackin, III, Esquire
Morris James LLP
500 Delaware Avenue, Ste. 1500
P.O. Box 2306
Wilmington, DE 19899

RE:  *Theresa Collins and Kelly Collins vs. Derek Dutton, The Board of
     Education of Cape Henlopen School District, Superintendent Robert
     Fulton, Principal Nikki Miller and Brian Donohue*
     C.A. No.:  S19C-01-045 ESB

Dear Counsel:

This is my decision on the respective Motions to Dismiss filed by Defendant

Derek Dutton ("Dutton"), and Defendants Superintendent Robert Fulton

("Fulton"), Principal Nikki Miller ("Miller"), Brian Donahue ("Donahue"), and the

Board of Education of Cape Henlopen School District (individually, the "Board," and collectively with Fulton, Miller, and Donahue, the "School Defendants").

This litigation involves an alleged sexual assault on the Plaintiff Theresa Collins ("Theresa") by Dutton at Cape Henlopen High School in 2015. Plaintiff Kelly Collins ("Kelly") is Theresa's younger sister. The Plaintiffs' Second Amended Complaint contains numerous intentional tort and negligence claims against the Defendants in connection with the sexual assault.

The School Defendants have moved to dismiss all of the claims asserted against them in the Second Amended Complaint. Dutton's Motion seeks dismissal of all claims against him except for Theresa's assault and battery claims. After consideration of the relevant law and the arguments offered by the parties, I find that the School Defendants' Motion to Dismiss should be **GRANTED**. Specifically, I find that: 1) Theresa's Title IX claim is untimely; 2) the School Defendants cannot be held vicariously liable for the intentional torts of Dutton in this case; and that 3) the School Defendants could not have reasonably foreseen Dutton's sexual assault of Theresa. With regard to Dutton, I have determined that his Motion to Dismiss should be **GRANTED IN PART** and **DENIED IN PART**. The negligence claims asserted against Dutton should be dismissed because the Second Amended Complaint, as written, only contains allegations of negligence on

2

behalf of the School Defendants. However, I find that Theresa's claims for intentional and negligent infliction of emotional distress warrant additional discovery making dismissal inappropriate at this stage.

## I. BACKGROUND[1]

The incident between Dutton and Theresa occurred at Cape Henlopen High School in 2015. The Board of Education of the Cape Henlopen School District is a reorganized school board operating under 14 *Del. C.* § 1043 and the governing body of the Cape Henlopen School District. At the times relevant to the current case, Theresa and Kelly were students attending Cape Henlopen High School in Sussex County, Delaware.

Up until at least October 2015, Dutton was a staff member and employee of the Cape Henlopen School District working primarily in the school theater.[2] Several instances of Dutton's interactions with students and colleagues had been brought to the attention of the Board and other school officials prior to the incident with Theresa. The first report occurred in December 2011, when a student alerted the Board that Dutton had called him a "pathetic asshole."

---

[1] The following facts are drawn from the Plaintiffs' Second Amended Complaint. *See* D.I. 18.

[2] Dutton's exact position and duties are unclear at this stage. According to the Plaintiffs, Dutton was not a licensed educator.

In October 2014, a female intern for Ms. Martha Pfeiffer ("Pfeiffer"), the school's theater director, reported that Dutton, in response to witnessing the intern's wet blouse, had said "Well, you know we all like you better when you're wet" and winked at her. At Pfeiffer's direction, the intern reported this incident to then Principal of Cape Henlopen High School Donahue. Also in October 2014, Fulton and the Board were made aware that Dutton had used a racial slur when speaking to a Jewish student.[3] Then, in November 2014, Pfeiffer informed Fulton and the Board of the female intern's complaint and that Dutton had called a red-headed student "fiery."

On April 20, 2015, Theresa, then a 17 year old junior at Cape Henlopen High School, reported to a vice principal that Dutton had thrown a power drill that had come "within an inch" of hitting another student in the head. A few days later, on April 22, 2015, Theresa encountered Dutton in the theater as she was coming to rehearse for an upcoming school musical. According to Theresa, Dutton reached down the back of her jeans and touched her underwear and buttocks. After this incident, Theresa felt unsafe and went to her car to cry.

---

[3] Around that time, Pfeiffer also told Fulton that Dutton scared her and had anger issues.

4

On May 12, 2015, Theresa filed an incident report to the school with regard to her interaction with Dutton on April 22, 2015. On that same day, a female high school senior filed a separate incident report alleging that Dutton had asked her "How good do you fuck?" on March 9, 2015, while she was preparing a monologue for a Shakespeare competition. Both Theresa and the female senior met with then Vice Principal Miller on May 13, 2015, where they were assured that the police would be notified and the matter taken care of. Subsequently, Theresa's parents, Virginia and Stephen Collins, also contacted then Principal Donahue and then Superintendent Fulton regarding the incident with their daughter. They were told that Theresa's allegations were being investigated and that Dutton would not be allowed on campus while students were present.

However, on October 14, 2015, Theresa, then a senior, encountered Dutton in the school parking lot. Seeing Dutton upset her greatly, and she told her parents about this incident. Thereafter, Virginia Collins contacted Fulton. She was told that he would talk to the school administration and find out why Dutton was still allowed on school property. A couple of months later, on December 17, 2015, Theresa's parents attended a parent-teacher conference where they again saw Dutton working in the school theater.

Theresa's parents wrote a letter to the Board on January 26, 2017, notifying

5

them that Dutton was still allowed to work on school property while students were present despite the previous reports of his inappropriate behavior. On December 12, 2017, Kelly, then a junior, encountered Dutton working in the school theater. Kelly informed her teacher that Dutton's presence made her uncomfortable. On March 7, 2018, Kelly again witnessed Dutton working in the theater. Soon thereafter, Virginia and Stephen Collins met with Kelly's guidance counselor, the theater director, and then Principal Miller to inform them that Kelly was withdrawing from the theater program because she felt unsafe due to Dutton's presence on school property.

The Plaintiffs have alleged numerous failures on behalf of the School Defendants in responding to the allegations of Dutton's misconduct. For example, they point out that, in April 2018, the Board's school resource officer was unable to locate the May 12, 2015, reports of Dutton's sexual abuse and harassment. Additionally, the School Defendants did not report the allegation of sexual abuse to either the Division of Child Protective Services or the Delaware State Police.

This action was originally filed by the Plaintiffs on January 23, 2019. The Plaintiffs' Second Amended Complaint (the "Complaint") was filed on May 23, 2019. The School Defendants moved to dismiss the Complaint on June 3, 2019. Dutton filed his Motion to Dismiss on August 2, 2019.

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim under Superior Court Civil Rule 12(b)(6), "all well-pleaded allegations must be accepted as true."[4] The motion must be denied if the plaintiff could "recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[5] The Court must read the complaint generously and view all well-pleaded allegations in a light most favorable to the plaintiff.[6] Dismissal is warranted only when "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[7]

## III. DISCUSSION

The Complaint contains ten counts against the Defendants for various wrongs suffered by Theresa and Kelly stemming from Dutton's alleged sexual assault of Theresa at Cape Henlopen High School. In response to the Defendants' Motions to Dismiss, the Plaintiffs have dropped several of the claims contained in the Complaint. I will begin my analysis with the claims against the School Defendants and follow with consideration of the claims against Dutton.

---

[4] *Spence v. Funk*, 396 A.2d 967 (Del. 1978).

[5] *Id.*

[6] *Bryce Thompson Inst. v. Medimmune, Inc.*, 2009 WL 1482237, at *4 (Del. Super. May 19, 2009).

[7] *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Aug. 20, 2004).

## A. Claims Against the School Defendants

The Complaint asserts claims against the School Defendants in some capacity in ten separate counts. In the Plaintiffs' Response to the School Defendants' Motion to Dismiss, the Plaintiffs agreed to dismiss Counts VII through X.[8] The remaining claims against the School Defendants in this dispute are as follows: Violation of Title IX of the Educational Amendments Act of 1972 against the Board (Count I); assault and battery against the Board (Count II); gross negligence against the School Defendants (Count III); gross negligence on theory of premises liability against the Board (Count IV); intentional infliction of emotional distress ("IIED") against the Board (Count V); and negligent infliction of emotional distress ("NIED") against the Board (Count VI). The claims contained in Counts I and IV against the Board are asserted by both Theresa and Kelly. All other claims are being advanced by Theresa alone. The School Defendants have moved to dismiss all claims against them.

### i. Theresa and Kelly's Title IX Claim Against the Board

In their Motion to Dismiss, the School Defendants assert that any Title IX claim based upon events that occurred in 2015 is untimely. Specifically, they argue that the relevant statute of limitations period for a Title IX claim is two years

---

[8] D.I. 20 ¶ 6.

8

in Delaware and that the last interaction between Dutton and Theresa occurred in April 2015. In response, the Plaintiffs claim that the applicable statute of limitations for their Title IX claim is the Delaware Child Victims Act, which establishes that civil actions based on the sexual abuse of a child have no statute of limitations. They also argue their Title IX claims accrued when they had reason to know that the School Defendants' deliberate indifference and mishandling of Dutton attributed to the sexual assault, not when the sexual assault actually occurred. Finally, the Plaintiffs point out that Kelly's Title IX claim falls within the limitations period asserted by the School Defendants. The School Defendants reply by asserting that a Title IX claim accrues at the time of the alleged abuse.

When faced with a Title IX claim, I must apply the most analogous state statute of limitations.[9] This is generally the state personal injuries limitations period, which is two years in Delaware.[10] However, the Plaintiffs argue that, in this instance, the most analogous statute of limitations comes from the Delaware Child Victims Act (the "CVA"). The CVA provides, in pertinent part, as follows:

> (a) A cause of action based upon the sexual abuse of a minor by an adult may be filed in the Superior Court of this State at any time following the commission of the act or acts that constituted the sexual abuse. A civil cause of action for sexual abuse of a minor shall be based upon sexual acts that would constitute a criminal offense under the Delaware Code.[11]

---

[9] *See Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d. Cir. 1989).
[10] *See* 10 *Del. C.* § 8119.
[11] 10 *Del. C.* § 8145.

The Plaintiffs fail to provide any case law in support of their novel theory that a Title IX claim involving the sexual abuse of a minor has no statute of limitations in Delaware. This is not altogether surprising as the CVA became effective relatively recently in Delaware on June 30, 2009, and only two other states, Minnesota and New York, have since enacted similar statutes. I have likewise been unable to locate a judicial opinion in any of the relevant jurisdictions addressing the particular issue raised in this case. For my analysis, I must acknowledge the potential ramifications of eliminating the statute of limitations for Title IX claims in Delaware involving the sexual abuse of a minor. This would have a significant impact on both the Courts and countless educational institutions and programs in this state. Such a decision cannot be made lightly; it necessitates a careful consideration of the language and purpose of both Title IX and the CVA.

Title IX provides, in pertinent part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[12] Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages

---

[12] 20 *U.S.C.* § 1681(a).

10

against a school district.[13]  The United States Supreme Court has held that, in order for a school district to be liable under Title IX for the sexual harassment of a student by one of its teachers, it must be shown that "an official of the school district who at a minimum ha[d] authority to institute corrective measures on the district's behalf ha[d] actual notice of, and [was] deliberately indifferent to, the teacher's misconduct."[14]  "Actual notice" must amount to "actual knowledge of discrimination in the recipient's programs."[15]  Further, "the response must amount to deliberate indifference to discrimination . . . The premise, in other words, is an official decision by the recipient not to remedy the violation."[16]

The foregoing makes clear that a Title IX claim does not necessarily arise from an incident of sexual harassment/abuse alone.  Rather, such a claim is based on a school district official's actions or inactions in response to receiving actual notice of a danger posed by a school employee.  The failure to adequately protect against, or respond to, an employee's misconduct is the wrong that a Title IX claim seeks to remedy.  Thus, in the current matter, while Dutton's alleged touching of

---

[13] *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 75-76 (1992).
[14] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998).
[15] *Id.* at 290.
[16] *Id.*

11

Theresa may have provided the impetus for the Plaintiffs' suit against the Defendants in general, the act itself, independent of circumstance, is insufficient as a basis for a Title IX claim. The Plaintiffs' inclusion of allegations in the Complaint that the School Defendants had knowledge that Dutton posed a danger to female students before the incident, and that Dutton continued to be seen on school grounds after the incident was reported, shows that the Plaintiffs are aware of the need to establish such facts in order to prove a violation of Title IX occurred.

Theresa's Title IX claim is necessarily based on the School Defendants' alleged failure to appropriately supervise, investigate, or manage Dutton's potential interactions with Theresa after her allegation of sexual assault. Said claim is not, and indeed cannot be based primarily upon the alleged sexual abuse of Theresa by Dutton. I therefore reject the Plaintiffs' contention that the CVA represents the appropriate statute of limitations for Theresa's claim. In order for her Title IX claim to be timely, it must have been brought within two years of its date of accrual.

Having determined the appropriate statute of limitations for Theresa's Title IX claim, I now turn to the issue of when that claim accrued. A Title IX claim accrues when a student knows or has reason to know of the injury upon which the

12

claim is based.[17] As previously discussed, Theresa's Title IX claim is based on the School Defendants' failure to appropriately handle the allegation that Dutton sexually assaulted Theresa. This failure should have been apparent to Theresa when she encountered Dutton in the school parking lot on October 14, 2015, several months after reporting the sexual assault to school officials and receiving assurances that Dutton would not be allowed on campus while students were present. If that was not enough, Theresa's parents later encountering Dutton working in the school theater while students were present on December 17, 2015, should have certainly put the Plaintiffs on notice of the School Defendants' deliberate indifference to Theresa's allegation. Accordingly, Theresa's Title IX claim accrued on October 14, 2015, or, at the very latest, on December 17, 2015. I need not decide which date is more appropriate as the Plaintiffs' initial complaint was filed on January 23, 2019, making any Title IX claim arising before January 23, 2017, untimely. Thus, I find that Theresa's Title IX claim is time barred and should be dismissed.

The School Defendants have also moved to dismiss Kelly's Title IX claim. For their part, the Plaintiffs argue that Kelly's claim is timely under a two year statute of limitations because her claim accrued on December 12, 2017, when she

---

[17] *See Moore v. Temple Univ.*, 674 Fed. Appx. 239, 241 (3d. Cir. 2017).

13

witnessed Dutton working in the school theater. I find that any timeliness argument is irrelevant as the Plaintiffs have failed to allege sufficient facts to support a Title IX claim against the School Defendants on behalf of Kelly. It is unfortunate that Kelly felt the need to withdraw from the theater program due to understandable discomfort from being around the person accused of sexually assaulting her sister. However, the Complaint contains no allegations that Dutton sexually harassed Kelly or even interacted with her at all. Ultimately, if the facts alleged in the Complaint are sufficient to support Kelly's claim then any student simply aware of a rumor or allegation of sexual assault against an employee of the school they attend could conceivably bring a valid claim under Title IX. Such a result clearly exceeds the intended scope of Title IX. Therefore, I also find that the School Defendants are entitled to dismissal of Kelly's Title IX claim.

### ii. Theresa's Assault and Battery Claims Against the Board

The School Defendants have moved to dismiss the assault and battery claims against the Board in Count II. They argue that such claims are subject to a two-year statute of limitations and that the Board cannot be found liable for the assault and battery of an employee under a theory of *respondeat superior*. The Plaintiffs counter by pointing out that Theresa's assault and battery claims are based on the sexual abuse of a child and therefore have no statute of limitations under Delaware

14

law.  Further, they posit that the Board is responsible for torts committed by Dutton pursuant to *respondeat superior* or vicarious liability through Restatement (Second) of Agency § 219.

As a preliminary matter, I find that Theresa's assault and battery claims, if legally sustainable against the board through either *respondeat superior*/vicarious liability, are subject to an unlimited statute of limitations pursuant to the CVA. The alleged illegal touching was sexual in nature and occurred when Theresa was 17 years old.

Under Delaware law, an employer can be found liable for torts committed by employees while acting within the "scope of their employment."[18]  In determining whether an employee acted within the scope of his or her employment, Delaware courts utilize a four-factor test pursuant to Restatement (Second) of Agency § 228.[19]  The four factors for consideration of the conduct of the employee are whether:

(1) It is of the kind he is employed to perform;
(2) it occurs within the authorized time and space limits;
(3) it is activated, in part at least, by a purpose to serve the master; and
(4) if force is used, the use of force is not unexpectable.[20]

---

[18] *Verrastro v. Bayhospitalists, LLC*, 208 A. 3d 720 (Del. 2019).
[19] *See Sherman v. State*, 133 A. 3d 971, 978 (Del. 2016).
[20] *Id.*

In a recent decision, the Delaware Supreme Court embraced, for the first time, § 228's companion provision, § 219, as an alternative avenue for which an employer may be found liable for the illegal acts of an employee in situations where said employee was acting "solely for their own purposes and hence not in the scope of employment."[21] In that case, the Court found that the State could be held liable for a sexual assault by a police officer under both § 219 (2)(c)[22] and § 219 (2)(d).[23]

Although the Delaware Supreme Court held that the § 219 exceptions applied in the context of a police officer and arrestee, this Court has declined to apply said exceptions to teacher-student relationships.[24] In *Bates,* the Court explained that the § 219 exceptions were inapplicable because the coercive authority, and the duty to protect an individual derived from said authority, of teachers and school districts over students was not comparable to the authority of police officers and the State over arrestees.[25]

---

[21] *Sherman v. State Dep't of Pub. Safety,* 190 A. 3d 148, 177 (Del. 2018) (quoting Restatement (Second) of Agency § 219 cmt. e (1958)).

[22] Section 219 (2)(c) "provides an exception to the scope of employment requirement in cases where the employee's conduct violated a non-delegable duty of the master." *Id.* at 182.

[23] Section 219 (2)(d) provides an exception to the scope of employment requirement in cases where the employee "was aided in accomplishing the tort by the existence of the agency relation." *Id.* at 179.

[24] *See Bates v. Caesar Rodney,* Del. Super., C.A. N16-12-235 FWW, at 13, Wharton, J. (Nov. 30, 2018).

[25] *Id.* at 13-16.

In the current case, the Plaintiffs do not attempt to argue that the Board can be found liable for Dutton's alleged assault and battery of Theresa under the four-pronged § 228 test. This is understandable as it cannot reasonably be argued that, based on the facts alleged in the Complaint, Dutton's misconduct was motivated in any capacity "by a purpose to serve the [school]."[26] Instead, they rely on the recent opinion issued by the Court in *Smith v. Liberty Mutual Insurance Company*[27] for the proposition that *respondeat superior* liability extends to the Board through the § 219 exceptions previously discussed. In *Smith*, the Court found that a school's insurance carrier was obligated to defend a teacher facing claims similar to those in the instant case because the conduct at issue satisfied the requirements for *both* the § 228 test and the § 219 exceptions.[28]

I decline to follow the Court's holding in *Smith* as applied to the facts in this case. First, I note a flaw in *Smith*'s analysis of *respondeat superior* liability. Contrary to the Court's finding in *Smith*, it is impossible for an employer to be liable for an employee's illegal conduct under both the § 228 test and the § 219 exceptions. As explained *supra*, the § 228 test is used to determine whether an

---

[26] *Sherman v. State Dep't of Pub. Safety*, 190 A. 3d 148, 173 (Del. 2018) (quoting § 228(1)(c)).

[27] 201 A. 3d 555 (Del. Super. 2019)

[28] *Id.* at 565.

17

employee's misconduct occurred within the scope of their employment. On the other hand, the § 219 exceptions support employer liability even if an employee acts "solely for their own purposes and hence not in the scope of employment."[29] Clearly, the same conduct cannot, at the same time, be both "within the scope of employment" and "not in the scope of employment." If a court finds that an employee's conduct satisfies the § 228 test, as was the case in *Smith*, then any further consideration of § 219 is moot.

Second, I think *Smith* too readily found that the § 219 exceptions generally apply to the interactions between students and teachers. *Smith*'s dicta essentially operates to subject schools to strict liability for all torts committed by their employees against their students. The staggering public policy implications of such a change in the law dictate that such a decision is best left to the Delaware General Assembly.

Third, I find that *Smith* misapplied the Delaware Supreme Court's holdings in *Sherman v. State Department of Public Safety*. The *Smith* Court did not address the *Bates* Court's holding that the § 219 exceptions generally did not apply in the student-teacher context. As explained in *Bates*, the *Sherman* Court determined that the officer's misconduct in that case fell within the § 219 exceptions due to the

---

[29] Restatement (Second) of Agency § 219 cmt. e (1958).

18

strong coercive power and authority that police officers have over arrestees.[30] To justify the application of the § 219 exceptions to student-teacher interactions, *Smith* noted that students may be "subject to detention, suspension, and police intervention" if they leave school property without proper authorization or otherwise "defy the school's authority."[31] Therefore, the *Smith* Court reasoned, "schools would owe a similar duty to students in their custody as the State owes to an arrestee in its custody."[32] This rationale fails as it equates school students with private citizens in police custody. Although some will undoubtedly disagree, a school is not a prison cell, nor is it the back of a police car. An arrestee attempting to flee their arrest or confinement will likely have to confront officers armed with deadly weapons and will face a significantly increased period of incarceration if they are captured. A student wishing to leave school faces only teachers forbidden from physically stopping them; the student need only open the door and walk away.[33] Thus, while teachers may have some coercive power and authority over

---

[30] Del. Super., C.A. N16-12-235 FWW, at 14 (Nov. 30, 2018).

[31] 201 A. 3d at 568.

[32] *Id.*

[33] Cape Henlopen School District 2017-18 Student Code of Conduct, at 10: "No Cape Henlopen School District employee may inflict or cause to be inflicted corporal punishment on a student."

19

their students, the magnitude of such power and authority unquestionably pales in comparison to that of a police officer over an arrestee.

Fourth, I note that even if the § 219 exceptions did apply to teachers generally, said exceptions would not apply in the current case based on any conceivable interpretation of the facts alleged in the Complaint. The Complaint fails to allege any facts that show Dutton either had or utilized any significant degree of coercive power or authority over Theresa in performing the alleged sexual assault. The Plaintiffs do not allege that Dutton was Theresa's teacher at the time of the incident, only that he worked in the school theater. Further, there are no allegations that suggest Dutton attempted to use his position or authority, whatever it was, to coerce Theresa into consenting or allowing him to touch her. Accordingly, I find that no "reasonable interpretation" of the facts alleged in the Complaint exists to support *respondeat superior* liability against the Board for the torts of Dutton based on his alleged sexual assault of Theresa.

### iii. Theresa's Gross Negligence Claim Against the School Defendants

The School Defendants argue that Theresa's gross negligence claims against them should be dismissed because there are no factual allegations in the Complaint that could support an inference that Dutton's sexual assault of Theresa was

20

foreseeable. Conversely, the Plaintiffs assert that the School Defendants intentionally ignored several warning signs that suggested that Dutton posed a danger to students at the school.

Gross negligence requires more than a showing of mere inadvertence or inattention, the actions in question must represent an "extreme departure from the ordinary standard of care."[34] An employer may be liable for the grossly negligent "employment of improper persons involving risk of harm to others, or in the supervision of [an] employee's activity."[35] "The deciding factor is whether the employer had or should have had knowledge of the necessity to exercise control over its employee."[36]

In this case, the Complaint is devoid of any factual allegations which reasonably support the idea that the School Defendants should have foreseen that Dutton would sexually assault Theresa. "An event is foreseeable if it is something which should have been reasonably foreseen or reasonably anticipated."[37] The Plaintiffs are correct that Dutton need not have actually molested another student to make it foreseeable that he would violate Theresa. However, to support a claim

---

[34] *Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A. 3d 1187, 1199 (Del. 2015).
[35] *Id.*
[36] *Id.*
[37] *Pitts v. Delaware Elec. Co-op., Inc.*, 1993 WL 58495, at *2 (Del. Super. Jan. 29, 1993).

of gross negligence against the School Defendants, there must at least have been some indication of which they were aware that Dutton was or may have been sexually interested in high school students. The Plaintiffs have failed to make such a factual allegation here.

The majority of the Plaintiffs' allegations only show that the School Defendants were aware that Dutton was a "scary" person that would say mean and hurtful things to students. Though these allegations suggest that Dutton had a short temper, there are no claims that he ever touched or physically harmed a student in any way.

Next, the Plaintiffs' claim that Dutton's use of the word "fiery" to a female student was "sexually suggestive."[38] This is simply incorrect. Merriam-Webster defines "fiery" as "full of or exuding emotion or spirit" or "easily provoked."[39] Therefore, I reject the Plaintiffs' suggested inference as wholly unreasonable.

The Plaintiffs' also claim that Dutton's sexually suggestive comment and wink directed at a 20 year old intern was a danger sign from which the School Defendants could have foreseen his sexual assault of Theresa. As a matter of law, I reject the idea that the verbal sexual harassment of a legal adult and colleague

---

[38] D.I. 20 ¶ 3.

[39] "Fiery." *Merriam-Webster.com*. 2019. https://www.merriam-webster.com (Nov. 6, 2019).

should operate to put an employer on notice that an offending employee might go on to commit sexual assault against a minor. To hold otherwise would create an untenable situation where schools would effectively be forced to fire any teacher caught flirting with another.

I do agree with the Plaintiffs that Dutton asking a female high school senior "How good do you fuck?" represents an act sufficient to put the School Defendants on notice of the need to "exercise control" over him. However, this comment was only brought to the School Defendants' attention over two weeks *after* he allegedly groped Theresa. There are no allegations that Dutton sexually assaulted or touched Theresa or anyone else after this report, only that he was seen on school property and in the theater. Seeing someone is not a legally recognizable or compensable harm. Therefore, I find that the School Defendants are entitled to summary judgment of Theresa's gross negligence claim.

### iv. Theresa and Kelly's Premises Liability Claims Against the Board

The School Defendants have moved to dismiss Theresa's premises liability claim against the Board as untimely. The Plaintiffs argue in response that this claim falls under the CVA and therefore has no statute of limitations.

In Count IV of the Complaint, the Plaintiffs re-allege their previous factual allegations, state the standard for premises liability, and claim that the actions of

23

the Board were grossly negligent. I am unable to detect a substantive difference between this claim and the gross negligence claim in Count III. Accordingly, I need not reach the timeliness argument and dismiss this claim for the reasons delineated in the previous section.[40]

The School Defendants have also moved to dismiss Kelly's premises liability claim against the Board. I find that dismissal of this claim is warranted as the Plaintiffs have not alleged that Kelly suffered any physical injury or bodily harm.[41]

### v. Theresa's IIED and NIED Claims Against the Board

The School Defendants assert that these claims are subject to Delaware's two-year statute of limitations period and are therefore time-barred. On this issue, I agree with the Plaintiffs that Theresa's IIED and NIED claims arising from Dutton's sexual assault fall under the CVA and thus have no statute of limitations. However, the Plaintiffs are asserting these claims against the Board under the theory of *respondeat superior*. In the above discussion of Theresa's assault and battery claims against the Board, I already determined that the Board could not be found vicariously liable for Dutton's torts against Theresa under the facts alleged

---

[40] *See supra*, 19-22.
[41] *See* Restatement (Second) of Torts § 343 (1965).

24

in the Complaint.[42]  Therefore, I find that Theresa's IIED and NIED claims against the Board should be dismissed.

### B.  Claims Against Dutton

In their Response to Dutton's Motion to Dismiss, the Plaintiffs explained that they are only pursuing Theresa's claims against Dutton for assault and battery (Count II); gross negligence (Count III); intentional infliction of emotional distress (Count V), and negligent infliction of emotional distress (Count VI).  Dutton has moved to dismiss Theresa's claims for gross negligence, IIED, and NIED.

### i. Theresa's Gross Negligence Claim Against Dutton

In his Motion to Dismiss, Dutton argues that a reading of Count III makes it clear that Theresa's gross negligence claim is directed only against the School Defendants.  In response, the Plaintiffs explain that they are asserting a gross negligence claim against Dutton as an alternative theory to the other intentional torts included in the Complaint.

I agree with Dutton's reading of Theresa's gross negligence claim. Although Count III is asserted against "All Defendants," it alleges that the "defendants" failed to, among other things, "supervise Dutton" even though they "had actual or constructive knowledge and actual notice of prior misconduct by

---

[42] *See supra*, 13-19.

25

Dutton which endangered students . . ."[43]  Plainly, a claim against Dutton cannot exist for a failure to supervise himself.  Further, the factual allegations in the Complaint concerning Dutton and his sexual assault of Theresa involve only intentional acts.  Therefore, I find that Theresa's claim of gross negligence against Dutton should be dismissed.

### ii. Theresa's IIED and NIED Claims Against Dutton

Dutton argues that Theresa's IIED and NIED claims against him should be dismissed because the Plaintiffs have failed to allege that Theresa suffered from any physical injuries stemming from the sexual assault.  The Plaintiffs counter that an allegation of a physical injury is unnecessary for their IIED claim.  Additionally, they argue that they have alleged physical suffering on Theresa's behalf sufficient for a valid claim of NIED.

For a defendant to be found liable for IIED, it must be proven that they "intentionally engaged in extreme or outrageous conduct that caused severe emotional distress."[44]  Conduct is outrageous if it "exceeds the bounds of decency and is regarded as intolerable in a civilized community."[45]  Whether a defendant's

[43] Complaint ¶¶ 63-70.
[44] *Hunt ex rel. DeSombre v. State, Dep't of Safety & Homeland Sec., Div. of Delaware State Police*, 69 A.3d 360, 367 (Del. 2013).
[45] *Id.*

26

alleged conduct can reasonably be regarded as extreme and outrageous is a question for the Court to decide.[46]

Here, Dutton's alleged conduct is certainly outrageous and beyond what any reasonable person could be expected to endure. Given the nature of his conduct, the Plaintiffs are not required to allege bodily harm to establish a valid claim for IIED.[47]

Turning to the NIED claim, a plaintiff may recover for physical injuries resulting from mental anxiety caused by a defendant's negligence.[48] However, transitory, non-recurring physical phenomena are not recognized as physical illnesses.[49]

Aside from conclusory allegations of physical and emotional harm, the Complaint only details Theresa's initial reaction to the sexual assault. The Complaint alleges that the touching made her feel "unsafe" and that she went to her car to cry.[50] Viewing this in a light most favorable to the Plaintiffs, it is reasonable to infer that Theresa may have suffered additional, long lasting physical and emotional damages. If the discovery process reveals that this is not the case,

---

[46] *Id.*
[47] *Doe v. Wildey*, 2012 WL 1408879, at *4 (Del. Super. Mar. 29, 2012).
[48] *Cooke v. Pizza Hut*, 1994 WL 680051, at *3 (Del. Super. Oct. 3, 1994).
[49] *Id.*
[50] Complaint ¶ 23.

then Dutton may seek dismissal of this claim on a motion for summary judgment. As it stands, I find that Theresa's IIED and NIED claims should survive Dutton's Motion to Dismiss.

## IV. CONCLUSION

The School Defendants' Motion to Dismiss is **GRANTED**. Dutton's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

Very truly yours,

E. Scott Bradley

ESB:jv:tls

FILED PROTHONOTARY SUSSEX COUNTY 2019 NOV 15 P 12: 51

28